**Cirilo MONDRAGON, Appellant,**

v.

**Morris AUSTIN, Appellee.**

**No. 03–96–00287–CV.**

Court of Appeals of Texas, Austin.

Oct. 16, 1997.

Sean E. Breen, Herman & Howry, L.L.P., Austin, for Appellant.

Lonnie Roach, Bemis, Roach & Reed, L.L.P., Austin, for Appellee.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

## ON MOTION FOR REHEARING

CARROLL, Chief Justice.

We withdraw our original opinion and judgment of May 22, 1997, and substitute the following opinion in its place.

### INTRODUCTION

This case is about making choices and taking chances. It is also about the consequences of choices made and chances taken.

Appellant Cirilo Mondragon chose to drink to the point of intoxication and then chose to drive his car. He took the chance of injuring another driver or destroying property. He and his insurance company then chose not to pay the claim for property Mondragon damaged while driving drunk. He and his insurance company now face the consequences of their choices.

### BACKGROUND

The facts of this case are undisputed. In mid–1993, Austin borrowed money and purchased a car for his daughter to drive while she was away at college. About two months later, Mondragon, driving drunk and backwards down the road, collided with Austin's car while Austin's daughter was driving it.[1] As a result of the accident, the car could not be driven. Austin had the car towed to his home.

Shortly after the accident, Austin filed a claim with Mondragon's insurance company. The company chose to deny the claim despite the circumstances surrounding the accident. Because Austin had no money and no collision insurance, he had no way to repair the car and did not obtain an estimate of the damage until September 1994, over one year after the accident.

As a consequence of Mondragon's choices, Austin had to continue making the payments on the car, send additional money to his daughter for transportation at college, and travel six-hundred miles each way to transport her back and forth on holidays.

---

1. Sometime during the year after the accident, Mondragon was convicted of driving while intoxicated when he collided with Austin's car. *See* Tex. Penal Code Ann. § 49.04 (West 1994).

In March 1995, Austin sued Mondragon for the cost of repairing the car, the value of his loss of use of the car, and exemplary damages. At trial, the defendant agreed to stipulate that: (1) the collision was Mondragon's fault; (2) the fair market value of the car at the time of the collision was $3,400; (3) the cost of repairing the car was $2,752.70; (4) the daily rental value for a replacement car was $20; and (5) any exemplary damages awarded Austin would not exceed $5,000.

The parties tried the cause to the judge on January 18, 1996. As of the date of trial, Austin had not repaired the car because, according to Austin, he did not have the money to do so. Mondragon did not offer any evidence to the contrary.

After the case was submitted, the judge wrote a letter to the parties in which she opined that the car was not a total loss, and that Austin was therefore entitled to recover for loss of use of the car. According to the letter, the judge determined that, at the stipulated daily rental car rate, Austin suffered $8,020 in damages by losing the use of the car between the date of the accident and September 20, 1994, two weeks after the repair estimate was obtained. The judge then rendered judgment for Austin in the amount of $10,772.70, plus $1,716.43 in prejudgment interest, plus costs. Mondragon appeals from the judgment in two points of error.

## DISCUSSION

■ In his first point of error, Mondragon focuses on the trial court's letter to the parties, which he contends reveals the basis of the trial court's ruling in the final judgment. Mondragon characterizes the letter as "findings of fact and conclusions of law." *See* Tex.R. Civ. P. 296–299a. Based on the content of the letter, Mondragon argues that the trial court committed an error of law in calculating the $10,772.70 damage award. Specifically, he faults the trial court for calculating loss of use damages over the unusually long period of time between the collision

and the date of the repair estimate in this case.

■ We first note that Mondragon failed to request findings of fact and conclusions of law and that the trial court's letter cannot constitute such findings of fact and conclusions of law. *See Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex.1990). Because no findings of fact and conclusions of law were requested or filed, we must uphold the judgment on any theory of law applicable to the case. *See Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). We are not confined to the method of calculation suggested in the trial court's letter. We will consider, then, whether any theory of law supports the trial court's award.[2]

■ In Texas, a person whose car has been totally destroyed as a result of a tort may recover only the value of the car, while a person whose car is repairable may also recover for loss of use of the car. *See Hanna v. Lott*, 888 S.W.2d 132, 139 (Tex.App.— Tyler 1994, no writ); *see also Pasadena State Bank v. Isaac*, 149 Tex. 47, 228 S.W.2d 127, 128 (1950). Because Mondragon does not challenge the trial court's apparent belief that the car was not a total loss, we will assume that the car was repairable. Accordingly, Austin as the owner may recover both the cost of the repairs and the value of the loss of use of the car. *Id.*

■ Because Mondragon stipulated that the cost of repairs was $2,752.70, we must determine whether we can uphold the remaining $8,020 of the award based in part on a loss of use theory. One way a plaintiff may prove loss of use damages is to establish the reasonable rental value of a substitute car. *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 118 (Tex.1984). The parties in this case stipulated that the reasonable rental value of a substitute car was $20 a day. They only dispute the length of time over which the damages may be computed.

Austin contends he should be eligible to recover loss of use damages for the entire

2. Clearly under the stipulation made by the parties, $5,000 of the award could be based upon an exemplary damages theory. However, because the parties have focused on the loss of use question we will not explore the exemplary damages theory.

period of time he was deprived of the use of his car. Mondragon, on the other hand, argues the period of time should be limited to that reasonably necessary to repair the car. He argues the car could have been repaired in two weeks, and thus he is not liable for damages that accrued in excess of two weeks.

Mondragon urges us to impose certain limitations on the availability of loss of use damages and the factors a court may take into account in determining those damages. He first advances his argument in terms of the "standard" courts must use to determine the period of time over which loss of use damages accrue. Specifically, he argues courts should apply an "objective reasonableness" standard that requires them to disregard the particular characteristics of the plaintiff in assessing the time period. Mondragon reasons that had the court employed this standard in this case, the court could not have allowed damages for the delay that resulted from Austin's lack of financial resources. Second, Mondragon couches his argument in terms of the mitigation of damages doctrine. That is, Mondragon suggests the doctrine requires plaintiffs to obtain estimates and repair automobiles sometime sooner than Austin did, as a matter of law. Finally, Mondragon argues courts should never award loss of use damages in excess of the total value of a repairable vehicle. We will address each of these arguments in turn.

### "Objective Reasonableness" Standard

■ In *Luna v. North Star Dodge Sales, Inc.*, the Texas Supreme Court discussed the appropriate method by which to measure loss of use damages for deprivation of the use of a repairable car. The court noted the "period of compensatory loss of use will be the amount of time the plaintiff was deprived of the loss of use of the automobile." *Luna*, 667 S.W.2d at 119. The court did not expound upon this statement except to explain that it is not wise to formulate a bright-line rule for the valuation of loss of use damages in all cases. *See id.* The court emphasized that "the thing to be kept in view is that the party shall be compensated for the injury done." *Id.* (quoting *Craddock v. Goodwin*, 54 Tex. 578 (1881)). We interpret this language as requiring courts to consider the particular circumstances of the plaintiff and the facts of each case in assessing loss of use damages.

■ Our conclusion is supported by the supreme court's discussion of another issue in *Luna*. Specifically, the *Luna* court held a plaintiff may recover loss of use damages *even though the plaintiff has not actually expended money renting another car.* In so holding, the court reasoned that to condition compensation on financial ability to rent a substitute car would deny a plaintiff compensation for the damages resulting from the defendant's wrongful act. *See Luna*, 667 S.W.2d at 118–19. The same reasoning applies to this case. If we were to limit Austin's loss of use award to two weeks, we would be penalizing him for his lack of financial resources, denying him recovery of the damages he suffered because of Mondragon's negligent act, and allowing the insurance company to reap the benefit of its refusal to pay the meritorious claim. The law does not permit or require such a result.

Our interpretation of *Luna* comports with the long-established law that a tortfeasor takes his plaintiff as he finds him. *See Coates v. Whittington*, 758 S.W.2d 749, 752 (Tex.1988) (citing *Driess v. Friederick*, 73 Tex. 460, 11 S.W. 493, 494 (1889)). Even the objective "reasonably prudent person" standard allows the fact-finder to determine what a reasonable person would do *under the circumstances surrounding the controversy at issue.* Accordingly, the fact-finder should consider the particular circumstances of the plaintiff in determining a compensable period of time for loss of use damages. We note that although the application of this doctrine works against Mondragon in this case, the doctrine might work in favor of the defendant in another case.

Mondragon cites a different supreme court case as contrary authority. *See Pasadena State Bank v. Isaac*, 149 Tex. 47, 228 S.W.2d 127 (1950). The court in *Isaac* discussed whether a plaintiff may recover the costs of both labor and parts as repair expenses when a vehicle is partially damaged. The court answered the question in the affirmative. *See id.* at 129. In so doing, the court quoted the Restatement of the Law of Torts as allowing, in cases like these, recovery of the

cost of repairs with "the value of the loss of use during the repairs." *See id.* Mondragon suggests the supreme court adopted the whole Restatement provision verbatim and thereby limited the period of recovery to the actual time it takes to repair the vehicle. We disagree. The court did not purport to address the temporal issue in *Isaac. Luna* is a more recent and clearer pronouncement of the supreme court's view of that subject.

In light of the above discussion and the facts of this case, we believe Austin is eligible to recover loss of use damages in excess of the two weeks it would have taken a mechanic to repair his car. Austin lost the use of his car because Mondragon, while intoxicated, negligently drove backwards down a street and collided with the car. The loss continued for more than a year because Mondragon and his insurance company chose to deny the claim.

Mondragon argues the reason Austin was deprived of the car for such an extended period of time was Austin's lack of financial resources, not Mondragon's negligence. That Mondragon happened to collide with a car whose owner did not have surplus disposable income does not absolve him of responsibility for the consequences of his negligent act. The court properly considered the particular facts surrounding the incident, including Austin's financial condition, in determining the compensable time period. *Accord Chemical Express Carriers, Inc. v. French,* 759 S.W.2d 683, 688 (Tex.App.—Corpus Christi 1988, writ denied).[3]

### Mitigation of Damages

■ Mondragon next asserts that Austin had a duty to mitigate his loss of use damages by repairing the car sooner and that he failed to do so as a matter of law, excusing Mondragon from paying for the delay.

■ Austin might have had a duty to mitigate, but there is no evidence that he breached that duty. In general, a plaintiff may not recover damages that could have been avoided or minimized "at a trifling expense or with reasonable exertions." *Id.* (citing *Walker v. Salt Flat Water Co.,* 128 Tex. 140, 96 S.W.2d 231, 232 (1936)). In other words, a plaintiff is expected to mitigate damages when he is reasonably able to do so. Whether Austin could have mitigated the loss of use damages with reasonably minimal effort is a question of fact to be resolved by the fact-finder.

The evidence supports a determination that Austin could not have reduced the loss of use damages "at trifling expense or with reasonable exertion." Austin testified that he asked Mondragon's insurance company to pay for the damage Mondragon caused, but the insurance company denied his claim. Furthermore, Austin testified he did not have collision insurance on the vehicle; consequently, he had to continue making loan payments on the car even though it was not driveable. He testified that he did not have any money in a checking or savings account to repair the car or purchase a new one. Mondragon offered no evidence contradicting Austin's testimony. Based on the record, we disagree that Austin failed to mitigate his damages as a matter of law. To the contrary, the record suggests Austin reasonably attempted to mitigate his loss of use damages by promptly submitting a claim to Mondragon's insurance company.

### Cap on Loss of Use Damages

■ Finally, Mondragon argues loss of use damages should be limited to the total value of the car as a matter of law. He reasons that it is nonsensical to limit damages in a total destruction case to the value of the car and simultaneously allow damages in a partial destruction case to exceed the value of the car.

We agree that the two rules, when viewed in conjunction under extreme fact situations, appear inequitable. The difference in the

---

**3.** Although Mondragon presents his argument in terms of the "standard" the court uses to determine damages, his argument suggests he is ultimately concerned about the trial court's application of the concept of proximate cause to the facts of this case. He hints that Austin's financial condition was akin to a "new and independent cause" that broke the causal connection between Mondragon's negligence and Austin's loss of use damages. Mondragon did not articulate that argument to the trial court and he does not do so in his brief; consequently, we will not address the issue here. For a discussion of the issue in a case involving similar circumstances, however, reference *Chemical Express Carriers, Inc. v. French,* cited above.

rules exists, however, because courts assume that a person does not suffer loss of use damages when a car is a total loss. Courts assume that the car can be replaced immediately. In contrast, we assume a partially damaged car, while repairable, cannot be repaired immediately. Consequently, a person whose car is only partially damaged suffers damage in addition to loss in value of the car. The person also suffers loss of *use* of the car, a value not necessarily correlative to the value of the *car*.

We believe the assumption made in partial damage cases is more realistic than that made in total destruction cases. In other words, even a person whose car is totally destroyed might suffer loss of use damages, because it may be difficult or impossible to replace the car immediately. For that reason, we decline to accept Mondragon's suggestion that we must equalize the two situations by limiting loss of use damages in partial destruction cases. We believe the better policy might be to reconsider permitting loss of use damages in total destruction cases. As discussed above, this case does not present those facts. We note at least two other Texas courts have affirmed awards derived from these rules even when the result was to award loss of use damages that exceeded the total value of chattel that had been only partially damaged. *See Metro Ford Truck Sales, Inc. v. Davis*, 709 S.W.2d 785, 790 (Tex.App.—Fort Worth), *affirmed on rehearing*, 711 S.W.2d 145 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.) (court awarded $74,016 for loss of use of a truck purportedly valued at $48,500); *McCullough–Baroid Petroleum Svc. v. Sexton*, 618 S.W.2d 119, 120 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.) (court awarded $30,880 for loss of use of equipment valued at $30,000). Accordingly, we overrule point of error one.

### Sufficiency of the Evidence

■ In his second point of error, Mondragon argues the evidence is both legally and factually insufficient to support the trial court's award of $10,772.70 in damages. In reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *See Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). We will uphold the finding if more than a scintilla of evidence supports it. *Id.* In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

The evidence detailed above constitutes more than a scintilla of evidence in support of the trial court's judgment. Mondragon stipulated that the cost of repairing the car was $2,752.70 and that the reasonable value of a rental car was $20 per day. Austin testified that he could not drive the car and had no money to repair or replace the car from the time of the collision even until the time of trial. This evidence supports an award of up to $8,020 in loss of use damages. Mondragon offered no evidence to refute Austin's testimony. The award is not, therefore, so against the weight of the evidence as to be clearly wrong or unjust.[4] For these reasons, we overrule Mondragon's second point of error.

### CONCLUSION

Mondragon chose to drive while intoxicated. He and his insurance company then chose not to pay Austin's claim. As a consequence of these choices, Austin's damages totaled more than three times the value of his car. In denying the claim for more than a year, Mondragon and his insurance company took a chance of being liable for extraordinarily high loss of use damages. They now suffer the consequences of the choices they made and the chances they took.

Some may argue our opinion will encourage future plaintiffs to delay repair intentionally to increase loss of use damages. We stress that there is no evidence in this case that Austin intentionally delayed repairing

---

4. Under the stipulations of the parties, we believe the trial court could have awarded $15,772.70 in total damages. See footnote 2, *supra*.

the car just to receive a windfall. All the evidence, suggests Austin had no means to repair the car or otherwise mitigate his damages, and he promptly gave Mondragon a chance to pay the claim. Furthermore, Mondragon does not argue and the record does not support a conclusion that the car was a total loss. Moreover, Mondragon stipulated that the appropriate measure of loss of use damages was the value of a car rented on a daily basis. Our holding is specific to these facts. We do not abrogate the plaintiff's duty to mitigate damages; the defendant in this case simply did not prove the plaintiff breached his duty. Having said that, we affirm the trial court's judgment.