TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00610-CV







Sherry Lynn Diers, Appellant



v.



Gary Wayne Diers, Appellee







FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 93V-174, HONORABLE DAN R. BECK, JUDGE PRESIDING








 Following a bench trial, the trial judge modified the conservatorship orders in the
Diers' final decree of divorce from a sole managing conservatorship to a joint managing
conservatorship and gave Mr. Diers the exclusive right to establish the primary residence of their
minor child. We will affirm the trial-court judgment.


Background and Procedural History


 Sherry Lynn Diers and Gary Wayne Diers divorced October 3, 1993. During their
marriage, Sherry and Gary had one child, Garrett Wayne, born in October of 1989. The original
decree of divorce appointed Sherry sole managing conservator and Gary possessory conservator. 
As part of the decree of divorce, Sherry and Gary agreed that the primary residence of Garrett
would be with Sherry and that Gary would have possession of Garrett under a standard possession
order. The parties further agreed that Gary would pay $1,000 per month in support and provide
health insurance for Garrett. The parties also agreed that Sherry and Garrett would live in Fayette
County or its contiguous counties, so long as Garrett was entitled to support. Gary and Sherry
further agreed that if Sherry moved from Fayette County or its contiguous counties, she would be
obligated to pay the reasonable cost of transportation for access and visitation periods with Gary. 

 For a brief period immediately following the divorce, Gary and Sherry amicably
managed their respective possessions of Garrett. Eventually, however, Gary and Sherry's ability
to interact deteriorated, and on August 18, 1995, Gary filed a Motion to Modify in Suit Affecting
Parent-Child Relationship seeking appointment as the sole managing conservator or in the
alternative, appointment as a joint managing conservator. Following a bench trial on February
24, 1997, the trial court signed an order on September 16, 1997 which granted Gary's motion. 
The order appointed Gary and Sherry joint managing conservators of Garrett; ordered that
Garrett's primary residence shall be in Fayette County; gave Gary the exclusive right to establish
the primary physical residence of Garrett; and ordered Sherry to pay child support of $372.18 per
month. Sherry brings this appeal asserting five points of error. 


Discussion and Holdings


 In a modification proceeding, the trial court may modify a sole managing
conservatorship to a joint managing conservatorship if the court finds that 1) the circumstances of
the child or sole managing conservator have materially and substantially changed since the
rendition of the original order; 2) the retention of a sole managing conservatorship would be
detrimental to the welfare of the child; and 3) the appointment of the parents as joint managing
conservators would be a positive improvement for and in the best interest of the child. Tex. Fam
Code Ann. § 156.104(a) (West 1996). Because there were no findings of fact or conclusions of
law requested or filed, it is implied that the trial court made all the necessary findings to support
its judgment. Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989). When the implied
findings are supported by the evidence, the appellate court must uphold the judgment on any
theory of law applicable to the case. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). 
We review the trial court's determination of conservatorship under an abuse of discretion standard. 
Doyle v. Doyle, 955 S.W.2d 478, 479 (Tex. App.--Austin 1997, no pet.) (citing Gillespie v.
Gillespie, 644 S.W.2d 449, 451 (Tex. 1982)). A trial court abuses its discretion when it acts in
an arbitrary and unreasonable manner, or when it acts without reference to any guiding principles.
Doyle, 955 S.W.2d at 479 (citing Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.
1991); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert.
denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986)). 

 In her first point of error, Sherry contends that the trial court erred by applying "an
erroneous standard" in modifying custody and appointing Gary and Sherry joint managing
conservators. Sherry contends that the trial court erroneously applied section 156.101 (1) of the
Family Code rather than section 156.104. We note that the only indication that the trial court
applied section 156.101 is a letter from the trial court to counsel regarding his proposed ruling. 
The trial court's letter does not constitute findings of fact and conclusions of law. Mondragon v.
Austin, 954 S.W.2d 191, 193 (Tex. App.--Austin, 1997, pet. denied). Even if this Court
considered the trial court's letter, we are not bound by an incorrect statement of the law. 
Hawthorne v. Guenther, 917 S.W.2d 924, 931 (Tex. App.--Beaumont 1996, writ denied) (trial
court's incorrect reason for its decision is not reversible error); Ace Drug Marts, Inc. v. Sterling,
502 S.W.2d 935, 940 (Tex. Civ. App.--Corpus Christi 1974, writ ref'd n.r.e.). A trial court
cannot abuse its discretion if it reaches a correct result, even for the wrong reasons. Hawthorne,
917 S.W.2d at 931; Luxenberg v. Marshall, 835 S.W.2d 136, 141-42 (Tex. App.--Dallas 1992,
no writ). We overrule point of error one. 

 In her second point of error, Sherry challenges the legal and factual sufficiency of
the evidence to support the trial court's finding that there was a "material and substantial change"
to support the appointment of Gary as a joint managing conservator. We note, however, that
Sherry's own pleadings allege a material and substantial change had occurred. Although Sherry
makes both legal and factual sufficiency challenges to the evidence, such challenges are not
independent grounds of error under an abuse of discretion standard, but rather are relevant factors
in assessing whether the trial court abused its discretion. Doyle, 955 S.W.2d at 479. 
Accordingly, we will construe her sufficiency of the evidence points as asserting an abuse of
discretion and review the evidence as it is relevant to whether the trial court abused its discretion
in modifying the original decree.

 According to the evidence, the primary issue regarding conservatorship was Gary
and Sherry's increasing inability to communicate and cooperate regarding Garrett's care and
activities. Both Gary and Sherry testified that immediately after the divorce, they were able to
communicate regarding their respective possessions of Garrett. Sherry testified that by late spring
of 1995, however, they were unable to communicate or agree on "nothing" regarding Garrett.
Since the time of the divorce, Gary and Sherry could not agree on Garrett's participation in sports,
clothes he should wear, or his religious activities. According to Gary, Sherry avoided talking with
him about Garrett's activities and schedule. 

 At the time of the divorce, Gary and Sherry both lived in La Grange. During the
summer of 1995, Sherry moved to Sealy, which is an approximately 50-55 minute drive from La
Grange, even though she had worked in La Grange for three years and continued working there
despite her move. Although allowed by the original decree, the move to Sealy created greater
distance for Gary to travel to visit Garrett and to participate in his activities. After Gary filed his
motion to modify, Sherry enrolled Garrett in activities such as soccer, swimming lessons and
karate in Bellville, Katy and Houston, which further hindered Gary's ability to be involved in
Garrett's life. Gary testified that the activities in which Garrett participates in other
cities--baseball, basketball, soccer and karate--are available in La Grange. According to Gary,
Garrett was required to travel almost 800 miles a month. Before moving to Sealy, Garrett had
lived in La Grange the first four years of his life. The move to Sealy also thwarted Garrett's
frequent visitation with his paternal grandmother who lives five miles from Gary.

 Sherry testified that at the time of the divorce she had a furnished house, no debt
on her vehicle, and approximately $5,000 in debt on furniture. Sherry also testified that she earns
approximately $28,000 per year and at the time of trial owed approximately $45,000 in credit card
debt. Gary earns between $70,000 and $80,000 a year. 

 The trial court acting as fact-finder is the sole judge of the credibility of the
witnesses and is permitted to believe or disbelieve any evidence. Burtch v. Burtch, 972 S.W.2d
882, 888-89 (Tex. App.--Austin 1998, no pet.). The trial court could have concluded based on
the evidence that Sherry's move, the increased travel for Garrett, and the increased hostility and
inability of Gary and Sherry to cooperate and communicate after an initial period of amicably
communicating, constituted a substantial and material change of circumstances. Accordingly,
given the evidence presented and the deference given to a trial court's determinations of credibility
and demeanor, we cannot conclude the trial court abused its discretion in finding that there were
substantial and material changes in Garrett's or Sherry's circumstances since the rendition of the
original decree. We overrule her second point of error. 

 In her third point of error, Sherry challenges the sufficiency of the evidence to
support the trial court's conclusion that appointing Gary a joint managing conservator would be
a positive improvement for Garrett. According to the evidence, Gary has a close relationship with
Garrett. Gary is very involved with Garrett's sports and church activities. Although Gary travels
with his work, he is always within two hours of La Grange. Gary's mother lives nearby and is
able to assist Gary in caring for Garrett. Gary also testified that he has several family members
and other people in La Grange on whom he can rely to help care for Garrett if necessary. Because
Sherry works in La Grange, if Garrett lives in La Grange and participates in sports and other
extracurricular activities in La Grange without having to travel to Bellville and Houston, Garrett
will have less travel time between periods of the parties' possessions and both parents will be able
to participate easily in his activities. Given the evidence presented and the deference given to a
trial court's determinations of credibility and demeanor, we are unable to say the trial court abused
its discretion in finding that appointing Gary a joint managing conservator would be a positive
improvement for Garrett. Point of error three is overruled. 

 Sherry argues in her fourth point of error that there is no evidence that the retention
of sole managing conservatorship would be detrimental to Garrett. Given the distance for Garrett
to travel to see Gary and the distance to many of Garrett's activities, even from his home with
Sherry in Sealy, the court could decide Garrett will travel much less if he lives with Gary in La
Grange. According to the evidence, Gary and Sherry's exchanges of Garrett are plagued with
disputes. For example, Sherry required that she, Sherry's teenage son, or her partially
handicapped mother who lives in Houston, must supervise Gary when he picked up Garrett at
school. In four years Gary had never failed to pick up Garrett or arrange for someone to do so. 
Each time, Sherry or her family member would change Garrett's clothes and retain his books and
homework. Once he picked up Garrett when Sherry was late and she raced her car up a one-way
street to catch him, blocked Gary's car, yelled at Gary, and took Garrett's backpack. Gary
testified that Sherry would change Garrett's clothes into something inappropriate, she would not
send other clothes with him, and she would not allow Garret to take his backpack and homework
with him to Gary's residence. As a result, she prevented Gary from helping or being involved
with Garrett's school work. Gary also testified that Sherry would not keep Gary adequately
informed regarding Garrett's activities. She refused to tell him about the school open house or
other events, refused to return his calls and would not relay information he requested about
Garrett. As the judge of the credibility and demeanor of the witnesses, the trial court could have
concluded that Gary wanted to be actively involved in Garrett's life, that Garrett should not be
deprived of a relationship with his father, and that Sherry's actions were calculated to hinder
Garrett's relationship with his father. See Furrer v. Furrer, 267 S.W.2d 226, 227 (Tex. Civ.
App.--Austin 1954, no writ) (best interest of the child is to know and be with each of its parents). 
The trial court could have concluded that the problems between Gary and Sherry were negatively
impacting Garrett. Under the evidence presented, we cannot say the trial court abused its
discretion in finding that retention of sole managing conservatorship would be detrimental for
Garrett. We overrule Sherry's fourth point of error. 


Conclusion


 Because we have overruled each of Sherry's points of error, we do not reach her
conditional point of error. (2) We affirm the trial-court judgment. 



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Jones and Yeakel

Affirmed

Filed: July 15, 1999

Do Not Publish
1. Section 156.101(a) provides that the court may modify an order that designates a sole
managing conservator of a child of any age if:


(1) the circumstances of the child, sole managing conservator, possessory
conservator, or other party affected by the order have materially and substantially
changed since the date of the rendition of the order; and 


(2) the appointment of the new sole managing conservator would be a positive
improvement for the child. 


Tex. Fam. Code Ann. § 156.101(a) (West 1996).
2. Even if the parties stipulated to an agreement, as Sherry contends, ordering an injunction as
a term or condition of conservatorship remains a decision for the trial court. 



ty and demeanor, we are unable to say the trial court abused
its discretion in finding that appointing Gary a joint managing conservator would be a positive
improvement for Garrett. Point of error three is overruled. 

 Sherry argues in her fourth point of error that there is no evidence that the retention
of sole managing conservatorship would be detrimental to Garrett. Given the distance for Garrett
to travel to see Gary and the distance to many of Garrett's activities, even from his home with
Sherry in Sealy, the court could decide Garrett will travel much less if he lives with Gary in La
Grange. According to the evidence, Gary and Sherry's exchanges of Garrett are plagued with
disputes. For example, Sherry required that she, Sherry's teenage son, or her partially
handicapped mother who lives in Houston, must supervise Gar