# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-05-00231-CV

---

**Junior Myers, Appellant**

**v.**

**Cheryl Ann Myers, Appellee**

---

**FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
NO. 14,782, HONORABLE C. W. DUNCAN, JR., JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Charles Franklin Wardell ("Junior") Myers, II appeals from a final divorce decree awarding Cheryl Ann ("Tammy") Myers one-half of the net equity in a 159.06-acre parcel of land near Evant. Junior contends that the district court erred in characterizing the parcel as community property subject to the court's division of the marital estate.[1] He brings two issues, both of which rest solely upon his claim that the district court erred in failing to enforce a "Partition and Exchange

---

[1] The district court in effect required Junior to purchase the value of Tammy's one-half share of the equity in the parcel but reimbursed Junior, from the community estate, the value of an initial down payment on the property purchase that he had made with his separate property. To determine the amount Junior would pay Tammy for her interest, the district court (1) determined the fair market value of the 159.06 acres, (2) subtracted the amount of Junior's down payment, (3) subtracted the amount of the community debt on the note on the property; and (4) then split the remaining amount to each party.

Agreement" ("the Agreement") that operated to establish the parcel as his separate property.[2] We overrule Junior's issues and affirm.

The final divorce decree makes no reference to the "Partition and Exchange Agreement" upon which Junior relies. After the decree was signed, both parties requested findings of fact and conclusions of law and submitted proposed findings. *See* Tex. R. Civ. P. 296. Junior's submission included a proposed finding that "[t]he Court did not enforce the Partition and Exchange Agreement signed by the parties during marriage." The district court ultimately adopted and signed Tammy's proposed findings of fact and conclusions of law, which made no mention of the Agreement but stated that the 159.06 acres of land were acquired by both parties during the marriage. Junior did not object to these findings, nor did he request additional or amended findings of fact and conclusions of law. *See* Tex. R. Civ. P. 298.

There is authority suggesting that Junior's failure to seek additional or amended findings concerning the enforceability of the Partition and Exchange Agreement waived that issue on appeal.[3] In any event, there is legally and factually sufficient evidence to support an implied

---

[2] Junior's first issue challenges the district court's failure to enforce the Agreement so as to characterize the parcel as community property. His second issue challenges whether the court had jurisdiction over the parcel as part of the community estate and therefore erred in awarding Tammy a portion of the parcel's appreciated value.

[3] By characterizing the parcel as separate rather than community property, the Partition and Exchange Agreement would have operated as an affirmative defense to Tammy's proposed division of the marital estate. A party asserting an independent ground of recovery or an affirmative defense in a trial before the court must request findings in support thereof in order to avoid waiver. *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 708 (Tex. App.—Fort Worth 2006, pet. filed); *Alma Invs., Inc. v. Bahia Mar Co-Owners Ass'n*, 999 S.W.2d 820, 822 (Tex. App.—Corpus Christi 1999, pet. denied). If the findings filed by the district court do not include any element of the ground of recovery or defense asserted, failure to request additional findings relevant thereto effects a waiver of the ground or defense. *Alma Invs., Inc.*, 999 S.W.2d at 820. Because the Agreement operated as

2

finding by the district court that the Agreement was ineffective and unenforceable.[4]

The district court first addressed whether Junior and Tammy had been married at all. Tammy filed for divorce from Junior in 2002. In his answer, Junior asserted that there was "no existing marriage between the parties." The district court heard evidence regarding the existence of a marriage and concluded that, although the pair were never ceremonially married, a common-law marriage had existed between the parties beginning on January 1, 1995.

Proceeding to the property division, the district court heard evidence regarding the purchase of the 159.06-acre parcel and the execution of the "Partition and Exchange Agreement." In 1998, before closing on the parcel, Junior obtained a printed "Partition and Exchange Agreement

---

a defense to Tammy's proposed division of the marital estate, and the district court did not make any formal findings or conclusions regarding the Agreement, Junior needed to request additional or amended findings in order to avoid waiving the issue. *See Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 410 (Tex. App.—Dallas 2006, no pet.).

[4] The record reflects that the district court did hear evidence regarding the Partition and Exchange Agreement and requested additional briefing regarding its enforceability. What purport to be copies of this briefing are contained in the appendices to the parties' appellate briefs (though not in the appellate record), along with a letter purportedly from the district court stating that it was "of the opinion that the attempted partition is ineffective, therefore, the property is part of the community." Strictly speaking, this letter is not a part of the appellate record. *See In re Naylor*, 160 S.W.3d 292, 295 (Tex. App.—Texarkana 2005, pet. denied). Furthermore, even if the letter was properly before this Court, there is authority stating that letters from the district court cannot constitute findings of fact and conclusions of law. *See Mondragon v. Austin*, 954 S.W.2d 191, 193 (Tex. App.—Austin 1997, pet. denied) (citing *Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990)); *see also Roberts v. Roberts*, 999 S.W.2d 424, 436 (Tex. App.—El Paso 1999, no pet.) (reviewing trial court letter or other "memorandum of decision" as if it were formal finding appears "to obviate Rule 296 and constitutes an injustice"). Nor could we look to any comments from the bench to ascertain the bases for the district court's ruling. *County of Dallas v. Poston*, 104 S.W.3d 719, 722 (Tex. App.—Dallas 2003, no pet.) (citing *Nesmith v. Berger*, 64 S.W.3d 110, 119 (Tex. App.—Austin 2001, pet. denied)). Nonetheless, as Tammy does not assert that Junior waived his right to contend that the Agreement should have been enforced, neither party disputes that the district court found the Agreement ineffective, and sufficient evidence supports that conclusion, we will proceed to address that issue.

Concerning 159.06 Acres" from a lawyer who had previously represented Tammy. Junior introduced into evidence a copy of the document executed by both himself and Tammy. However, prior to the document being signed, the printed text of the document had been modified by handwritten alterations that were consistent with Junior's position in the divorce that no marriage existed between the parties. For example, the printed text of the preamble was modified as follows (handwritten additions designated by italics; deletions by strikeouts):

> This agreement is made by JUNIOR MYERS, ~~Husband~~ *single man*, and ~~TAMMY DIAMICIS, Wife~~ *Cheryl Ann DeAmicis, friend*. We are ~~already~~ *not* married at common law, and we are making this agreement to set out in writing our understandings concerning this ~~marriage~~ *friendship*.

Similarly, under the heading "<u>Confirmation of Separate Property</u>," the document listed "<u>Separate Property of ~~Husband~~ *Junior*</u>." But not all references to "husband" and "marriage" in the document were modified in this manner.

The family code permits "spouses" to enter into agreements to partition or exchange their community property into separate property. Tex. Fam. Code Ann. § 4.102 (West 2006). However, a partition or exchange agreement is not enforceable if the party against whom enforcement is requested proves that the party did not sign the agreement voluntarily or the agreement was unconscionable when it was signed. *Id*. § 4.105 (West 2006). "Voluntary" execution under section 4.105 is intentional and the product of free will. *Sheshunoff v. Sheshunoff*, 172 S.W.3d 686, 695 (Tex. App.—Austin 2005, pet. denied). In *Sheshunoff*, we explained that "the presence of such factors as fraud, duress, and undue influence may bear upon the inquiry" of whether a partition and exchange agreement was involuntarily executed, but they are neither necessary nor

4

always sufficient to establish involuntary execution. *Id*. at 697. Instead, we consider evidence of the common-law defenses as they relate "to the controlling issue of whether the party resisting enforcement executed the agreement voluntarily." *Id*. In the record before us, there is evidence of factors that, when considered together, would support an implied finding by the district court that the Partition and Exchange Agreement was involuntarily executed, ineffective, and unenforceable.

Perhaps the most significant factor is that it is unclear whether the "Partition and Exchange Agreement," as modified by the parties, would fall within chapter 4 of the family code, as it manifests the parties' understanding and intent that they were *not* married and had merely a "friendship." Additionally, the circumstances surrounding the execution of this agreement also tend to belie a voluntary act to partition marital property. Tammy described these circumstances: "We had been fighting for quite a while, and he threw those [papers] in my face and told me I had to sign them." She elaborated that Junior had "screamed at [her] for two hours." In explaining why certain terms in the Agreement were crossed out, Tammy testified, "When it is signed on here, and there's some things crossed out on it, and it was done because when you get yelled at constantly or have a gun pulled on you, yes, sir, you do change things."[5] She also recounted that these events had occurred in their bedroom, not in any public place, and that she had never seen another page of the document containing what purported to be her notarized additional signature alongside Junior's. These circumstances resemble the types of influences that have been held capable of overcoming free will and establishing the common-law duress defense. *Sheshunoff*, 172 S.W.3d at 697 (citing

---

[5] Tammy never elaborated on her assertion that Junior "pulled" a gun on her. Following her statement, the district court instructed Tammy to "[j]ust answer the question and do not volunteer anything." The gun allegation was never again mentioned by either party.

*Matelski v. Matelski*, 840 S.W.2d 124, 128-29 (Tex. App.—Fort Worth 1992, no writ)); *see also*

*Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (characterizing duress "as the result of threats

which render persons incapable of exercising their free agency and which destroy the power to

withhold consent").

Considering all of these circumstances together, legally and factually sufficient

evidence would support an implied finding that Tammy did not voluntarily execute an agreement

to partition marital property. Therefore, the district court did not err in refusing to enforce the

"Partition and Exchange Agreement." We overrule Junior's issues and affirm the district court's

judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   December 8, 2006

6