

| | |
|---|---|
| ABIE WOLF, | § No. 08-14-00236-CV |
| Appellant, | § Appeal from the |
| v. | § 243rd District Court |
| GARRY AND BONNIE STARR, | § of El Paso County, Texas |
| Appellees. | § (TC# 2012DCV5225) |
| | § |

## **O P I N I O N**

This is the first in a series of cases which have come before this Court involving a dispute over the towing, repair, and, ultimately, ownership of a motor home. When Appellees hired Appellant to tow their motor home to El Paso after it broke down in rural west Texas, they likely did not anticipate the progeny of litigation that would result. In the instant case, an unpaid mechanic's lien asserted by Appellant resulted in a title dispute between the parties, while Appellees claim no mechanical work was ever agreed to between them and the towing bill was paid in full.

Following a jury trial and verdict returned in favor of Appellees for actual damages, mental anguish, attorney fees, and exemplary damages, Appellant filed this appeal claiming the evidence was legally and factually insufficient to support multiple parts of the jury award.

### *Background Facts*

### **The Underlying Dispute**

Appellees own a 1999 Country Coach Affinity motor home, which they purchased in 2006. They use the motor home for travel and for friends and relatives to visit them at their home in Rockport, Texas.

The parties' quarrel began in May 2012, when the motor home broke down at the U.S. Border Patrol checkpoint near Sierra Blanca, Texas. Mrs. Starr testified they heard a loud noise as they slowed down when approaching the checkpoint station, approximately a mile from reaching it. Appellees arranged for the motor home to be towed from the interstate outside of Sierra Blanca to Van Horn on May 15, 2012, the morning after it broke down. The towing company in Van Horn did not have the ability to repair the motor home at their facility. Accordingly, Appellees sought a towing company who could transport the motor home from Van Horn to El Paso to repair it. At the suggestion of their friend, Virgil Beagles, Appellees contacted Appellant to tow their motor home from Van Horn to El Paso. Appellant did retrieve the motor home on May 16, 2012, the same day Appellees returned to their home in Rockport. Appellees allege Beagles paid Appellant for the tow to El Paso as a way for him to pay off a debt that he owed to Appellees for purchasing a forklift from them. Appellant cashed a check from Beagles on June 7, 2012. Appellant, however, claims Beagles told him to perform various maintenance work on the motor home and Appellant informed Beagles he would be charging Appellees storage for the motor home during that time.

Over the course of the next few months, a number of disputes arose between the parties over their agreement and alleged monies owed, and Appellant refused to release the motor home to Appellees. In June of 2012, after Appellant cashed the check from Beagles, Appellees tried to retrieve the motor home. Mr. Starr traveled to El Paso and went to Appellant's property to obtain the motor home along with his friend, Troy Douglas, who was a retired sheriff's deputy. However,

2

Appellant refused to release the motor home to Appellees because they refused to sign a release of liability for damage to the motor home.

On June 20, 2012, Appellant filed a small-claims court petition against Appellees, claiming they owed him $9,775 for work, storage, and towing on a 57-foot motor home. Appellees dispute they owed any amount of money to Appellant at that point. In July of 2012, Appellees made a formal demand on Appellant to release the motor home. Mr. Starr made another trip out to El Paso and tried to retrieve the motor home on July 6, 2012, but Appellant refused to release it.

On July 26, 2012, Appellant informed Appellees via written correspondence he intended to sell the motor home at auction as a result of the monies allegedly owed, but did not indicate when he intended to do so. Appellees ultimately filed a counter-claim against Appellant in the small-claims-court case for conversion. They also sought an injunction against Appellant preventing him from selling or otherwise converting the motor home. The small-claims injunction hearing occurred on August 7, 2012; however, Appellees were not able to obtain injunctive relief at that time.

**The Trial Court Litigation and Relevant Procedural History**

On August 7, 2012, the same day of the injunction hearing in small-claims court, Appellees sued Appellant in state court for conversion and requested injunctive relief to prevent Appellant from selling or otherwise altering the status quo of the motor home. On October 22, 2012, Appellees filed a First Supplemental Petition alleging additional causes of action for misrepresentation and common law fraud, violations of the Texas Deceptive Trade Practices Act, and breach of contract. Then, while litigation between the parties was already underway, Appellant obtained a Texas title to the motor home in his name by asserting a mechanic's lien on the vehicle. Appellees filed a Second Supplemental Petition for a declaratory judgment asking the trial court

3

to declare Appellant's title void and enter a declaration of their rightful ownership over the motor home.

The hearing regarding Appellees' application for temporary injunction occurred November 15, 16, and 17, 2012. On December 6, 2012, the trial court issued a temporary injunction requiring Appellant to deposit the Texas title to the motor home in the registry of the Court, move the motor home to a licensed storage facility at Appellant's expense, pay to have the vehicle winterized, and take no further action to encumber title to the motor home.

On April 8, 2013, the trial court found Appellant failed to comply with provisions of the injunction requiring him to move the vehicle to a storage facility, and ordered him to immediately release the motor home to Appellees' agent, and pay $800.00 in attorney fees incurred by Appellees to enforce the prior injunction. Then, on September 26, 2013, the trial court signed an order holding Appellant in contempt for failing to obey the April 8 order, and for violating the December 6 injunction. Appellant was ordered to pay Appellees' attorney fees and costs, and was sentenced to seven days' confinement for contempt.

### Trial on the Merits

The case was tried to a jury beginning April 25, 2014, lasting four days. Appellees presented ten witnesses, including the live testimony of Mrs. Starr, the deposition testimony of Mr. Starr read into the trial record, and live testimony from five additional witnesses including Appellant, the relevant portions of which will be discussed subsequently in this opinion. Appellant did not put on any additional witnesses.

Before the close of Appellees' case, the trial court granted their request for declaratory judgment that they were the owners of the motor home and the Texas title obtained by Appellant was void. The jury answered all questions in favor of Appellees and the Court signed a judgment

reflecting the jury's damages awards in favor of Appellees. Specifically, the jury awarded Appellees actual damages totaling $286,000.00, plus $100,000.00 in exemplary damages, and attorney fees. The $286,000.00 actual damages award is comprised of the following jury awards: $80,000.00 for physical damage to the motor home; $10,000.00 for consequential damages; $36,000.00 for loss of use of the motor home; $40,000.00 for past mental anguish to each Appellee; and $40,000.00 for future mental anguish to each Appellee.

Appellant filed a motion for new trial and judgment notwithstanding the verdict, both of which were denied by the trial court. Appellant timely filed this appeal.

### *Discussion*

Appellant raises the following issues on appeal:[1]

(1) Whether the evidence was legally and factually sufficient to support an award of past mental anguish in favor of Appellees;

(2) Whether the evidence was legally and factually sufficient to support an award of future mental anguish in favor of Appellees;

(3) Whether the evidence was legally and factually sufficient to support an award of past loss of use of the motor home in favor of Appellees; and

(4) Whether the evidence was legally and factually sufficient to support an award of $80,000 in actual damages to the motor home.

### **Standards of Review**

Legal sufficiency and factual sufficiency both challenge the sufficiency of the evidence in the case to support various determinations by the fact finder. Legal sufficiency questions the existence of any evidence to support a particular finding, and essentially claim the evidence at trial can point to only one legal outcome—that is, the opposite of the outcome made by the fact finder.

---

[1] When Appellant filed his brief, he was represented by counsel. Since then, his attorney has withdrawn. Appellees did not file a traditional brief in response to Appellant's brief. Rather, via *pro se* correspondence to the Court, they requested the Court deny Appellant's appeal. At this time, both parties are proceeding *pro se* in this appeal.

*See, e.g., Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). When a party challenges the factual sufficiency of the evidence, it essentially concedes conflicting evidence was presented at trial but argues "the evidence against the jury's finding is so great" that to find the opposite was erroneous. *See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275 (Tex.App.--Amarillo 1988, writ denied). The two challenges are, in many ways, remarkably similar to one another, but each requires different treatment by a reviewing court on appeal.

A legal sufficiency challenge is essentially a no-evidence standard; that is, (a) where the evidence shows a complete absence of a vital fact, (b) the court is barred by law or rules of evidence from lending weight to the only evidence offered in support of a vital fact, (c) the evidence offered to prove the vital fact is no more than a scintilla, or (d) the evidence conclusively proves the opposite of a vital fact, a legal sufficiency challenge must be sustained. *See Ford Motor Co.*, 135 S.W.3d at 601. A legal sufficiency review "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

Factual sufficiency challenges require courts of appeals to weigh all of the evidence in the record. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). Because Appellees carried the burden of proof on all of the issues which Appellant now appeals, Appellant is required to demonstrate there is insufficient evidence to support the jury's awards. *See Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex.App.--Corpus Christi 1990, writ denied). We must therefore examine and weigh all the evidence, both supporting and conflicting, regarding the finding at issue. *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). An insufficient evidence issue will be sustained when the evidence in support of the issue—even if it is the only evidence at all regarding that issue—is too weak to support the finding. *See Ritchey v. Crawford*, 734 S.W.2d 85, 86-87 &

n.1 (Tex.App.--Houston [1st Dist.] 1987, no writ)(*citing* Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361, 366 (1960)). Only where the evidence supporting the finding is so weak "as to be clearly wrong and unjust," will we set aside a trial court's judgment on the issue. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

**Issue One: Was the Evidence Legally and Factually Sufficient to Support the Jury's Finding for Past Mental Anguish?**

Each Appellee received $40,000 in past mental anguish from the jury, which the trial court incorporated into the judgment. Appellant argues the evidence presented at trial cannot support these awards. In support, Appellant cites to *Parkway Co. v. Woodruff*, which contains a thorough and lengthy explanation of the evolution of mental anguish damages in Texas case law and other jurisdictions. *See id.*, 901 S.W.2d 434, 442-45 (Tex. 1995). Specifically, and pertinent to this case, Appellant argues Appellees were unable at trial to prove "the nature, duration, or severity of their anguish," nor provide "any evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.'" *Id.* at 444.

We find it helpful to include a larger excerpt from *Parkway* detailing the difficult task juries are expected to accomplish in deciding whether or not mental anguish damages should be awarded, and, indeed, the difficult task we must undertake to determine the propriety of the decision the jury reached.

> [T]he only guidance given by trial courts to juries is a confounding definition of mental anguish, of which the following is typical:
>
> > 'The term "mental anguish" implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.
>
> *Trevino v. Southwestern Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex.Civ.App.--Corpus Christi 1979, no writ). This definition requires a jury to distinguish between

7

disappointment and severe disappointment, between embarrassment and wounded pride, between anger and indignation. It is little wonder that courts and juries have found this and similar definitions of mental anguish 'somewhat unwieldy.' *Sanchez v. Guerrero*, 885 S.W.2d 487, 494 (Tex.Civ.App.--El Paso 1994, no writ).

When a challenge is made to the sufficiency of the evidence to go to the jury or to support the jury's finding, the same type of problem persists. The reviewing court must distinguish between shades and degrees of emotion. These distinctions are critical under our substantive law because evidence of lesser reactions cannot support an award of mental anguish damages.

Under this admittedly nebulous definition and the traditional standard of review, it is nevertheless clear that an award of mental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine. Such evidence, whether in the form of the claimants' own testimony, that of third parties, or that of experts, is more likely to provide the fact finder with adequate details to assess mental anguish claims. Although we stop short of requiring this type of evidence in all cases in which mental anguish damages are sought, the absence of this type of evidence, particularly when it can be readily supplied or procured by the plaintiff, justifies close judicial scrutiny of other evidence offered on this element of damages.

When claimants fail to present direct evidence of the nature, duration, or severity of their anguish, we apply traditional 'no evidence' standards to determine whether the record reveals any evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' to support any award of damages.

*Parkway*, 901 S.W.2d at 444.

In *Parkway*, the plaintiffs testified at trial that, following the flooding of their property, they experienced anger, friction in their relationship with one another, and being upset over the incident's temporarily disruption of their lifestyle. *Id.* at 444-45. However, the record was void of testimony regarding the "nature, duration, or severity" of the plaintiffs' mental anguish, and the evidence indicated the plaintiffs experienced nothing more than "mere emotions[,]" which did not rise to the level of compensable mental anguish. *Id.* at 445.

### *Analysis*

Mrs. Starr testified at trial to the following:

8

Q. [By Mr. Garay]: [Y]ou're asking for mental anguish and distress. Tell us about your mental anguish. What have you gone through?

A. Well, I've had problems with crying a lot; problems with my stomach; problems with excessive diarrhea; problems with anger. Normally, I'm a very calm person, and I take a lot of it. But once you push me into a corner, then I explode. And unfortunately, the only person I could explode on was my husband, which at the time just didn't need it. And the worry – where were we going to get all this money? How much is it going to cost? Being raised –it's not right to steal something from somebody else. That's all there is to it.

.        .        .

But, I mean, after that, you just – you don't steal. You just don't steal something from somebody. That's it.

Q. (BY MR. GARAY) The last 11 and a half months, has this worn you out? I mean, more than that, I'm sorry. It's more than 11 months.

A. You can't sleep at night. This has totally worn us out. Traveling back and forth, trying to enforce Mr. Wolf to do what the judge's order is, and he ignores it, and he ignores it, and he ignores it. And he interferes. Just the mental anguish of getting in a car, driving all the way out here, then having to go through all this court stuff, then having to drive all the way back with a sick husband on oxygen, it's just — what it does to you mentally, you're not the same person. You're just not that same person you were, and you get angry very fast with your own kids, your grandchildren. My great-grand babies don't understand when grandma gets angry at them because I get a fax that Mr. Wolf pulled another shenanigan of his, and I'm upset about that when they come to see me and it's – it's just been – pardon my French, but it's been hell.

Mrs. Starr also testified how Appellant's actions affected her husband:

A. Well, he doesn't like me very well yelling at him and screaming and – his health has gone down, but he's still on oxygen, and he just – he's not himself. He doesn't get up and do his normal things. He had rabbits. He doesn't – he got rid of his rabbits. We were taking care of two horses for my son. He just couldn't do it. He stays in bed depressed. He was raised by his father that was a military first sergeant, and he was taught right from wrong, went to parochial school. He doesn't understand. And with all his other health issues that he has, he's just about given up on life.

Q. But you and your husband are asking the jury to compensate you for mental anguish and distress?

A. Yes.

9

It is apparent from the testimony provided above that Appellees satisfied their burden of showing the nature, duration, and severity of the mental anguish each suffered. Mrs. Starr testified her mental anguish manifested itself in digestive issues, bouts of explosive anger against her husband and her grandchildren, and excessive crying. She also testified she had been unable to sleep. Based on a question from her attorney, she testified the duration of her ordeal was in excess of eleven months. As to the severity, she testified it had "been hell" on her and Mr. Starr, and it changed her as a person. With regard to Mr. Starr, she testified he had become listless and given up on hobbies he previously found joy in, such as taking care of rabbits or his son's horses. He also became despondent and refused to spend time with family, specifically citing depression over the motor home as the source of his distress. We find the testimony adduced regarding Appellees' mental anguish sufficiently illustrates the nature, duration, and severity of Appellees' issues, and illustrates a sufficiently "'high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger[.]'" *See Parkway Co.*, 901 S.W.2d at 444.

Appellant claims the mental anguish suffered by Appellees, if any, was the result of the litigation between the parties or his worsening COPD, not the acts of Appellant. In support, he cites to trial testimony by Mrs. Starr regarding her and her husband's mental anguish, which includes her testimony that although the COPD wore her husband out, he would often decline to come back out to play with his grandchildren, citing depression over the motor home as the reason he wished to be left alone. She also stated that traveling to El Paso to resolve issues regarding the motor home took their toll on Mr. Starr, stating that when they were "down there [in Rockport], he's fine; up here [in El Paso], he's not."

We appreciate that compensable mental anguish cannot simply be a result of participating in the ongoing litigation; however, Texas courts have found that evidence of the offending party's

conduct, coupled with evidence of prolonged mental anguish sufferance due to the ongoing litigation, rises to the level of establishing a substantial disruption in daily routine or a high degree of mental pain and distress necessary for compensable mental anguish. *S. Tex. Freightliner, Inc. v. Muniz*, 288 S.W.3d 123, 135 (Tex.App.--Corpus Christi 2009, pet. denied)(in addition to evidence of mental anguish suffered as a result of defendant's conduct, testimony from the claimant that his life at home during the trial was "sad, sometimes, with anger. I don't desire this for anybody when you know that you're innocent," being "very tense" during the trial and his stomach "wanted to kind of betray [him,]" was sufficient evidence of compensable mental anguish); *CA Partners v. Spears*, 274 S.W.3d 51, 77 (Tex.App.--Houston [14th Dist.] 2008, pet. denied)(applying the standard adopted by the Texas Supreme Court in *Parkway* to support the award of mental anguish damages under the DTPA, the court found it relevant that the claimant "was forced to hire a lawyer to appeal the forcible entry and detainer suit to county court, and paid $2,500 in attorney's fees in connection with that appeal").

Similarly, Appellees' claims are based on a number of the Appellant's actions that occurred during the litigation, including Appellant's attempt to procure title to the motor home, place a lien upon it, and sell it at auction. We find it reasonable the jury could have inferred the toll taken on Mr. Starr, as testified to by Mrs. Starr, was the result of the actions of Appellant while the litigation was ongoing which, in part, form the basis of Appellees' claims. Additionally, it was reasonable for the jury to infer the travel involved that was so difficult on Mr. Starr's health was at least in part as a result of having to make multiple trips to El Paso in an attempt to reclaim possession of the motor home, not simply traveling to participate in court proceedings.

We find the evidence is legally and factually sufficient to support the jury's findings for past mental anguish for each of the Appellees. Appellant's first issue is overruled.

11

**Issue Two: Was the Evidence Sufficient to Support the Jury's Finding for Future Mental Anguish?**

In his second issue, Appellant claims Appellees failed to satisfy their burden of proving future mental anguish damages, and there was zero evidence adduced at trial regarding same.

Having set forth the parameters for recovery of mental anguish damages and the standards of review for sufficiency of the evidence, we will not restate them here. Further, it is apparent from a review of the full record at trial that no evidence elicited from any source supports an award of future mental anguish damages to either Appellee. The only evidence supporting mental anguish damages involves past mental anguish suffered by the Appellees, which we set forth *in toto*, above. We therefore sustain Appellant's second issue.

**Issue Three: Was the Evidence Sufficient to Support Jury's Finding for Loss of Use of the Motor Home?**

In his third issue, Appellant argues Appellees failed to present any evidence in support of their request for loss of use damages from the jury, and accordingly the evidence was legally and factually insufficient to support the award.

Appellant correctly states that in claims of conversion of personal property, damages are typically measured by the reasonable cost to rent a replacement, although actual rental of such replacement is not necessary. *See J&D Towing, LLC v. American Alternative Ins. Corp.*, 478 S.W.3d 649, 659 (Tex. 2016)(*citing Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 119 (Tex. 1984)). Other cases cited by Appellant support this method of measuring loss-of-use damages when a party has been deprived of property through some kind of taking, and/or suffered partial or complete destruction of said property. *See Cessna Aircraft Co. v. Aircraft Network LLC*, 213 S.W.3d 455, 465 (Tex.App.--Dallas 2006, pet. denied); *Bossier Chrysler Dodge II, Inc. v. Rauschenberg*, 201 S.W.3d 787, 809 (Tex.App.--Waco 2006), *rev'd on other grounds*, 238 S.W.3d 376 (Tex. 2007); *Chemical Express Carriers, Inc. v. French*, 759 S.W.2d 683, 687 (Tex.App.--

Corpus Christi 1988, writ denied); *Mondragon v. Austin,* 954 S.W.2d 191, 193 (Tex.App.--Austin 1997, pet. denied).

### *Analysis*

In their Second Supplemental Petition, Appellees specifically claim $70.00 per day, beginning May 16, 2012 "to the present." However, at trial, Appellees put on very little testimony regarding their damages for loss of use of the motor home. As Appellant discusses in his brief, the only evidence addressing loss of use was provided by Mrs. Starr, who testified that she valued loss of use at $35,000 but provided no basis for that figure. Additionally, she indicated their damages for loss of use revolved around being able to use the motor home to spend time with their grandchildren. We agree with Appellant this categorization of damages is more akin to mental anguish rather than loss of use, which is typically more pecuniary in nature and able to be precisely measured based on the time lost and the reasonable rental value. *See Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 119 (Tex. 1984); *Elias v. Mr. Yamaha, Inc.*, 33 S.W.3d 54, 61 (Tex.App.--El Paso 2000, no pet.).

We find the evidence was legally and factually insufficient to support the jury's award for loss of use damages for the motor home. We therefore sustain Appellant's third issue.

### Issue Four: Was the Evidence Sufficient to Support Jury's Finding for $80,000 in damages to the Motor Home?

In his fourth and final issue, Appellant argues the evidence is legally and factually insufficient to support the jury's $80,000 award for physical damage. Specifically, Appellant argues the evidence indicates the damage was caused as a result of being in the possession of Tigua Auto Sales for approximately five months before it was inspected for damage, and/or as a result of not being winterized. Primarily, however, Appellant complains the figure for damages to the

motor home include $24,000 for depreciated value, comprising $1,000 per month for each month since the parties' dispute began.

Appellant claims the depreciated value "may be relevant to the market value of the motor home, but it has nothing to do with the cost of repairs[,]" and argues Appellees may not recover the cost to repair the motor home and its diminished value because the repairs have not been conducted.

As the Texas Supreme Court discussed in *Parkway Co.*, which Appellant acknowledges, there are instances where damages can be awarded for both diminution in value and for cost of repairs; the two "are not always duplicative." *Parkway*, 901 S.W.2d at 441. Where the diminution is calculated by comparing the original value to the value after repairs are made, the two categories of damages are not duplicative of one another. *Id.*, (*citing Ludt v. McCollum,* 762 S.W.2d 575, 576 (Tex.1988)). Accordingly, we must determine whether the record contains evidence of how the diminished value contained in the repair estimate was calculated, and whether it is proper to include it in the award of damages.

### *Analysis*

In support of their claim for physical damage to the motor home, Appellees produced Richard "Ricardo" Rivera, the owner of Pro Tech Diesel. Rivera and his business specialize in auto and heavy equipment repair and body work. Rivera has an associate degree and various other training and certifications qualifying him to work on heavy equipment, including recreational vehicles such as the motor home. Appellees hired Rivera to conduct a visual inspection of the motor home in order to put together an estimate for those parts of the motor home that were damaged but could be repaired. The estimate he came up with totaled approximately $80,000.

Among the items detailed in Rivera's estimate were the following:

- The windshields were cracked and broken;

- The air pump assembly lines were cut or torn, which was not the result of wear and tear;

- The passenger-side drive tire was missing a chunk, likely due to improper towing;

- The deep cycle batteries, which are the batteries for the "home" portion of the motor home, were dead, likely as a result of not being operated for two years;

- The diesel engine, which was also likely as a result from not being operated for two years;

- A number of issues as a result of not being winterized, including cracked storage tanks and broken air conditioning systems;

- A failed generator, likely as a result of not being run.

In this case, the evidence put on by the Appellees from Mr. Rivera clearly set forth, line item by line item, the damages sustained to the motor home. Rivera testified the items in the invoice were the result of improper towing of the motor home, failure to operate the motor home and letting it deteriorate, and/or failing to winterize the motor home. Notably, Rivera testified the damage caused to the motor home when it broke down in Sierra Blanca, including damage to the oil pan and transmission pan, was not included in the invoice at the instruction of Mrs. Starr.

However, no evidence indicates the diminution in value was calculated by comparing the original value to the value after repairs are made. Without this information, we cannot be confident the diminished value damages are not duplicative of the cost of repair damages. *See Parkway Co.*, 901 S.W.2d at 441.

We find the evidence is sufficient to support the award for damages to the motor home totaling $50,384.35, which does not include the $24,000.00 for diminished value listed in the estimate provided by Rivera in Plaintiffs' Exhibit 41. With the tax rate of 7.6875 percent cited by

15

Rivera on the adjusted damages figure, the total award for damages to the motor home supported by the evidence is $54,565.15.

We sustain Appellant's fourth issue only as it pertains to the diminished value portion of the damages estimate.

### *Conclusion*

The error in the judgment concerns those parts of the judgment where the evidence was insufficient to support the award for damages; liability is not in issue. *See Waples-Platter Co. v. Commercial Standard Ins. Co.*, 294 S.W.2d 375, 377 (Tex. 1956). Regarding the awards for past and future mental anguish, loss of use, and diminution of value, we have authority, pursuant to Rule 43.2 of the Texas Rules of Appellate Procedure, to reform the judgment removing the improper jury awards, and affirm it based upon the evidence in the record supporting the jury's awards for past mental anguish, physical damage to the motor home, and the other categories of damages awarded by the trial court and not challenged in this appeal. *See* TEX.R.APP.P. 43.2(b)(c).

Accordingly, we affirm the judgment for past mental anguish damages of $40,000 for each Appellee; modify the judgment to award actual damages of $54,565.15, as indicated above. We reverse and render a judgment of zero as to the issue of future mental anguish and loss of use damages.

December 23, 2020

YVONNE T. RODRIGUEZ, Justice

Before Rodriguez, J., Palafox, J., and Yanez, Ret. Senior Justice
Yanez, Ret. Senior Justice (Sitting by Assignment)

16