# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-09-00397-CV

**Hanson Aggregates West, Inc., Appellant**

**v.**

**Edwin R. Ford, Regina Ford, Clarence Cain, Connie Cain, James L. Kersey, Mary Kersey, Brett Papell and Lynn Papell, Appellees**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT NO. C2007-0056A, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## O P I N I O N

We withdraw our opinion and judgment dated January 6, 2011, and substitute the following in their place. We overrule appellees' motion for rehearing.

In dispute in this appeal are the substantive and procedural standards that govern claims for permanent injunctive relief against a private nuisance. A group of homeowners filed suit alleging that a nearby rock quarry had created a nuisance and sought both money damages and a permanent injunction limiting quarry operations. A jury failed to find either that the quarry owner had intentionally created a nuisance, that the owner had negligently created a nuisance, or that the owner's conduct was "abnormal and out of place in its surroundings such as to create a nuisance." Based on the jury's verdict, the district court rendered judgment that the homeowners take nothing

on their money-damage claims. However, the district court also issued a permanent injunction based on the court's own determinations that the quarry operations "can and do create a nuisance" and "in balance of the equities a permanent injunction should issue." We are called upon to determine whether the permanent injunction was an abuse of discretion in light of the jury's verdict and the evidence at trial. We conclude that it was, and will render judgment vacating the injunction.

## BACKGROUND

Appellant Hanson Aggregates West, Inc., owns and operates a rock quarry near the City of Garden Ridge. Although this quarry has been in operation in some form for decades, over time both the quarry and Garden Ridge-area residential neighborhoods have expanded and grown closer toward one another. Appellees are four married couples who own homes in the quarry's general vicinity. Three of the couples—Edwin and Regina Ford, Clarence and Connie Cain, and Brett and Lynn Papell—live in a subdivision called Trophy Oaks, which is adjacent to Hanson's land, in houses located between approximately 1,000 to 2,000 feet away from the quarry. The fourth couple, James and Mary Kersey, live about a mile away from both Trophy Oaks and the quarry.

Contending that explosive blasting operations at Hanson's quarry were creating vibrations, noise, smoke, and dust that were damaging their homes and diminishing their health and quality of life, thereby constituting a nuisance, appellees sued Hanson seeking a permanent injunction to limit the blasting, as well as actual damages and punitive damages. The case was tried to a jury. Approximately two weeks of testimony was presented.

2

Prior to submission, appellees requested a jury question that inquired whether Hanson had, by a preponderance of the evidence, "created a 'nuisance.'" "Nuisance," in turn, was defined as "a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort and annoyance to persons of ordinary sensibilities." This definition of "nuisance" tracks language in Texas Supreme Court decisions. *See Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004) (citing *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003)). Hanson objected to appellees' proposed "nuisance" question. The district court ultimately submitted three alternative broad-form questions that required the jury to find both (1) the existence of a "nuisance" (which was defined the same as in appellees' requested question) *and* (2) one of three forms of culpability in regard to the "nuisance":

QUESTION NO. 1

Did Hanson intentionally create a nuisance as to any of the following?

. . . .

QUESTION NO. 2

Did Hanson negligently create a nuisance as to any of the following?

. . . .

QUESTION NO. 3

Was Hanson's conduct abnormal and out of place in its surroundings such as to create a nuisance as to any of the following?

These questions tracked the elements of what Texas courts have described as "actionable nuisance." *See, e.g.*, *City of Tyler v. Likes*, 962 S.W.2d 489, 503-04 (Tex. 1997) ("Courts have broken actionable nuisance into three classifications: negligent invasion of another's interests; intentional invasion of another's interests; or other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests." (citing *Bible Baptist Church v. City of Cleburne*, 848 S.W.2d 826, 829 (Tex. App.—Waco 1993, writ denied))). The jury was instructed to answer each of Questions 1, 2, and 3 separately as to each of the eight appellees, with either a "Yes" to signify an affirmative finding by a preponderance of the evidence, or otherwise a "No."

In all three questions, the jury answered "No" as to each appellee. Following the jury's verdict, appellees urged the district court that the verdict, while perhaps foreclosing a judgment awarding them money damages, did not limit the court's power "in equity" to issue a permanent injunction to restrain any "nuisance" that the court found to exist. The district court ultimately rendered a final judgment that appellees take nothing on their claims for monetary relief. However, the court further adjudged "that the Quarry operations, specifically by blasting, can and do create a nuisance" and "that in balance of the equities a permanent injunction should issue." The district court issued a permanent injunction limiting the strength and location of quarry blasting operations. Hanson appeals.[1]

---

[1] Appellees, as well as a co-defendant of Hanson below—Austin Powder Company, the blasting contractor at the quarry—also perfected appeals but subsequently dismissed them. Austin Powder is no longer a party to this proceeding.

4

**ANALYSIS**

In a single issue on appeal, Hanson argues that the district court abused its discretion in issuing the permanent injunction. We review a trial court's issuance of injunctive relief for an abuse of discretion. *Operation Rescue v. Planned Parenthood*, 975 S.W.2d 546, 560 (Tex. 1998). The general test for abuse of discretion is whether the court acted without reference to any guiding rules and principles. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004). A trial court is also said to "clearly abuse its discretion" if it fails to interpret or apply the law correctly. *See In re Texas Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 612 (Tex. 2006).

Hanson urges that the district court misapplied the law by granting a permanent injunction in the absence of either jury findings or conclusive evidence establishing an underlying cause of action for nuisance.[2] While acknowledging that a permanent injunction is an equitable remedy whose issuance is ultimately left to the trial court's discretion, Hanson emphasizes the predicate requirement that "[n]o final relief, including a permanent injunction, can be granted in a contested case without a determination of legal liability." *See Valenzuela v. Aquino*, 853 S.W.2d 512, 514 n.2 (Tex. 1993). Consequently, as Hanson observes, a trial court lacks discretion to issue a permanent injunction unless supported by at least one valid underlying cause of action that is established either by conclusive evidence or fact findings. *See id.* at 513-14. This requirement is illustrated by the Texas Supreme Court's decision in *Valenzuela*. In that case, a doctor who performed abortions sued individuals who had been picketing his house, seeking damages and

---

[2] As appellees observe, Hanson does not complain that the district court abused its discretion with regard to the scope of the injunction itself or its balancing of the equities, only that the court had no discretion to issue a permanent injunction in the first place.

injunctive relief based on causes of action for negligent infliction of emotional distress and invasion of privacy. At trial, the doctor had obtained jury findings on only his negligent-infliction theory, and the trial court had rendered judgment awarding damages and a permanent injunction prohibiting picketing within 400 feet of the doctor's home. The Texas Supreme Court held that the judgment, including the permanent injunction, could not be sustained based on a negligent-infliction cause of action because no such tort was recognized in Texas. *See id.* at 513. Nor, the supreme court reasoned, could the judgment be supported by the invasion-of-privacy theory where the doctor "did not request that either of the[] elements [of invasion of privacy] be submitted to the jury, and the evidence did not establish either element beyond dispute." *Id.*

Where facts material to the underlying cause of action's existence are in dispute, Hanson adds, a litigant is entitled to have a jury determine them, as the Texas Constitution guarantees the right to jury trial of factual disputes in both legal and equitable actions. *See* Tex. Const. art. V, § 10; *State v. Credit Bureau of Laredo, Inc.*, 530 S.W.2d 288, 292-93 (Tex. 1975); *Casa El Sol Acapulco, S.A. v. Fontenot*, 919 S.W.2d 709, 715-16 (Tex. App.—Houston [14th Dist.] 1996, writ dism'd).[3] The jury's "findings on issues of fact are binding." *Shields v. State*,

---

[3] In *Fontenot*, the Fourteenth Court of Appeals summarized the historical basis for this right to jury trial in equitable actions:

> There is no common-law right to a jury trial in equity. However, two provisions of the constitution insure the right to a jury trial in Texas. The first is contained in the Texas Bill of Rights. *See* Tex. Const. art. I, § 15. This provision guarantees "the right to a jury in all actions where that right existed at the time the Constitution was adopted." Because the English chancery were judges of both fact and law at the time our constitution was enacted, this provision does not alter the common law tradition eschewing juries in equity actions.

6

27 S.W.3d 267, 272 (Tex. App.—Austin 2000, no pet.). Assuming the jury finds those facts, "[t]he determination whether to grant an injunction based on ultimate issues of fact found by the jury is for the trial court, exercising chancery powers." *Id.*

Hanson contends that the evidence did not conclusively establish an underlying cause of action for nuisance and that the district court thus properly submitted the ultimate issues of disputed fact to the jury. Because the jury failed to find the facts that would establish a nuisance cause of action, Hanson adds, the district court lacked any discretion to issue the permanent injunction. *See Valenzuela*, 853 S.W.2d at 513-14. Hanson further observes that the district court did not purport to disregard any of the jury's findings on the basis that they were not supported by legally sufficient evidence (i.e., hold that the evidence conclusively established an actionable nuisance that the jury failed to find), *see* Tex. R. Civ. P. 301,[4] but instead

---

Because of Texans' familiarity with Spanish law and procedure, they adopted a second constitutional provision insuring the right to a jury trial in all causes. This provision is found in the Judiciary Article. *See* Tex. Const. art. V, § 10. Thus, in Texas, the "traditional distinctions between actions at law and suits in equity have never carried the procedural significance accorded to them in other states of the Union." The law in Texas is that the right to a jury trial extends to disputed issues of fact in equitable as well as legal proceedings.

*Casa El Sol Acapulco, S.A. v. Fontenot*, 919 S.W.2d 709, 715-16 (Tex. App.—Houston [14th Dist.] 1996, writ dism'd) (citations and footnotes omitted).

[4] *See also City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (citing Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362-63 (1960)) (holding that evidence is legally insufficient if evidence establishes conclusively the opposite of the vital fact).

7

indicated in the final judgment that it was relying on its own "finding" of a nuisance.[5] That "finding" was in itself error, Hanson urges, because the fact-finding power in this case belonged exclusively to the jury.

Emphasizing "the extraordinary dissimilarity between the facts of *Valenzuela* and those of the present case," appellees suggest that the respective roles of jury and judge are different in suits seeking to permanently enjoin an alleged nuisance. Appellees cite no authority for that proposition, however, and the Texas Supreme Court has indicated that the same principles control. In addressing the respective roles of judge and jury in a nuisance case, the supreme court has explained that "a litigant has the right to a trial by jury in an equitable action," the jury makes findings on "ultimate issues of fact" that are "binding," and the trial court—"exercising chancery powers"—then determines "whether to grant an injunction based upon the ultimate issues of fact found by the jury." *State v. Texas Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979).

More recently, in an extensive analysis of the distinctions between temporary and permanent nuisances and how the difference should be determined, the supreme court rejected the potential criterium of remediability by injunctive relief with the following reasoning delineating the respective roles of judge and jury in regard to equitable-relief claims for nuisance:

_____

[5] Hanson also emphasizes that in a pre-judgment letter to the parties, the district court indicated that "it does not conclude that a nuisance in this case was established as a matter of law," but instead "finds, in equity, that the quarrying operations, specifically by blasting, can and do create a nuisance of a recurring nature irrespective of the absence of an actionable remedy at law." Although such pre-judgment letters do not control the standard or scope of our appellate review, *see Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990); *Mondragon v. Austin*, 954 S.W.2d 191, 193 (Tex. App.—Austin 1997, pet. denied), we nonetheless acknowledge that the district court's statements are consistent with its subsequent judgment.

> Categorizing a nuisance as temporary or permanent is . . . a question for the jury. But abatement is a discretionary decision for the judge after the case has been tried and the jury discharged. One is only partly dependent on the other: w*hile judges cannot permanently abate a nuisance until jurors decide there is one*, a trial judge may decide to abate a nuisance whether it is temporary or permanent, and may choose not to abate either even if that is the only remedy requested.

*Schneider*, 147 S.W.3d at 286-87 (emphasis added and footnotes omitted). Significantly, in support of its statement that "judges cannot permanently abate a nuisance until jurors decide there is one," the court cited *Valenzuela* for the proposition that a "permanent injunction [was] improper as one cause of action was invalid in Texas and [the] other was not submitted to jury." *See id.* at 286 n.115.

Finally, we also observe that the Dallas Court of Appeals, in a suit alleging restrictive-covenant violations and nuisance, dissolved a permanent injunction restraining the location and speed at which their defendants drove vehicles on their own property because, among other reasons, no jury question had been submitted regarding the defendants' operation of vehicles. *Webb v. Glenbrook Owners Ass'n*, 298 S.W.3d 374, 391-92 (Tex. App.—Dallas 2009, no pet.).

Appellees refer us to no authorities indicating that the respective roles of jury and judge in regard to permanent injunctions are fundamentally different in nuisance cases than they are in other cases. Especially in light of the supreme court's reasoning in *Texas Pet Foods* and *Schneider*, we cannot conclude that they are.[6]

---

[6] *Texas Pet Foods* did involve a subtle distinction in the application of these principles, however. Although the jury failed to find a violation of a Clean Air Act prohibition against "causing or contributing or threatening to cause or contribute to the emission of odors or other air contaminants into the atmosphere . . . in such concentration and of such duration as are or may tend to be injurious to or adversely affect human health or welfare, or as to interfere with the normal use and enjoyment of animal life, vegetation or property," the trial court issued a permanent injunction that, in part, barred the same conduct. *State v. Texas Pet Foods, Inc.*, 591 S.W.2d 800,

Appellees further attempt to distinguish this case from the general rule of *Valenzuela* based on a contention that the district court never submitted to the jury the proper factual predicate for a permanent injunction. Appellees acknowledge that "[a] finding that a nuisance is intentionally or negligently created, or abnormal and out of place for its surroundings," as submitted in the jury charge, "is generally necessary to recover damages in a private nuisance suit." *See City of Texarkana v. Taylor*, 490 S.W.2d 191, 194 (Tex. Civ. App.—Texarkana 1972, writ ref'd n.r.e.). But, appellees insist, "[s]uch a finding . . . is <u>not</u> necessary to support injunctive relief." Instead, appellees reason, one can obtain a permanent injunction based solely on a finding of a "nuisance"—i.e., "a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort and annoyance to persons of ordinary sensibilities"—regardless whether the nuisance is an "*actionable* nuisance" for which damages can be awarded. Consequently, while the district court submitted the broader issue of "actionable nuisance" to the jury, it did not, appellees urge, submit the question of "nuisance" alone that controls their right to a permanent injunction.

Based on that premise, appellees maintain that the jury's failure to find an "actionable nuisance" was immaterial to their claim for injunctive relief. Appellees also emphasize that they requested a jury question inquiring whether a "nuisance" alone existed and that the district court, at Hanson's urging, refused it. The effect of the district court's refusal to submit their requested

---

804-05 (Tex. 1979). This part of the injunction was not an abuse of discretion, the Texas Supreme Court reasoned, because it had been predicated on jury findings of hundreds of other specific violations. *See id.* at 802, 804-05. Consequently, this holding is consistent with the general rule from *Valenzuela* that a permanent injunction must be predicated on jury findings or conclusive evidence establishing at least one valid cause of action.

10

question on "nuisance," appellees urge, was to "reserve this question for itself in its chancery powers," and they insist that nothing in the above authorities proscribes such a procedure under these unique circumstances. In the alternative, if it was improper for the district court to make its "nuisance" finding in lieu of the jury, appellees argue that Hanson waived that complaint through "invited error" by persuading the district court not to submit their "nuisance" question to the jury.

We need go no further than to reject appellees' premise that Texas law recognizes a right to permanent injunctive relief against "nuisance" apart from the theories of "actionable nuisance" that were submitted to the jury. Some confusion regarding this area of the law is understandable, as the case law addressing "nuisances" has historically tended toward a conceptual incoherence that prompted Dean Prosser, in his seminal article on the subject, to term it "a sort of legal garbage can." *See* William L. Prosser, "Nuisance Without Fault," 20 Tex. L. Rev. 399, 410 (1942); *see also Taylor*, 490 S.W.2d at 193 (noting "the obscure and confused state of the law" and observing that "it is very difficult, perhaps impossible, to reconcile much that the courts have written on the law of private nuisance"). But as Prosser explained, and as Texas courts have since come to recognize, the availability of a remedy for "nuisance" is grounded in tort principles. "Nuisance," in the sense that appellees are using the term (a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort and annoyance to persons of ordinary sensibilities), refers to a type of damage or invasion of another's interests that can potentially be actionable in tort. *See Likes*, 962 S.W.2d at 504 (quoting Prosser, 20 Tex. L. Rev. at 416); *Taylor*, 490 S.W.2d at 193. However, the type of invasion that characterizes "nuisance" is not, in itself, a legal wrong that gives rise to a right to relief. Similar to many other types of invasions or

11

infringements, the invasion characterizing "nuisance" becomes tortious and wrongful only when caused by intentional or negligent conduct, or conduct that is abnormal and out of place in its surroundings (essentially a form of strict-liability nuisance). *See Likes*, 962 S.W.2d at 504 ("As in the case of any other kind of damage, it may be inflicted by conduct which is intended to cause harm, by that which is merely negligent, or by that which involves an unusual hazard or risk, in line with the principle of *Rylands v. Fletcher* [7]." (quoting Prosser, 20 Tex. L. Rev. at 416)); *accord Hicks v. Humble Oil & Ref. Co.*, 970 S.W.2d 90, 96 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *Bily v. Omni Equities, Inc.*, 731 S.W.2d 606, 611-12 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (citing Restatement (Second) of Torts § 822 (1977)); *Taylor*, 490 S.W.2d at 193-94 (citing *Taylor v. City of Cincinnati*, 55 N.E.2d 724 (Ohio 1944); *Rose v. Standard Oil Co. of New York, Inc.*, 185 A. 251 (R.I. 1936)). This is the import of the term "actionable nuisance" in Texas law—one of the three categories of nuisances that gives rise to a cause of action in tort. *See Likes*, 962 S.W.2d at 504; *see also* Black's Law Dictionary 1171 (9th ed. 2009) (defining "actionable nuisance" as when condition or act that could be termed a "nuisance" falls within class of torts). And, without a valid cause of action for nuisance (i.e., actionable nuisance), appellees were entitled neither to damages nor to a permanent injunction. *See Valenzuela*, 853 S.W.2d at 513-14.

In essence, appellees advocate for a theory of absolute-liability nuisance. We find no support for such a theory in Texas law as a basis for any form of judicial relief. The sole authorities appellees cite in support of it are *Hot Rod Hill Motor Park v. Triolo*, 276 S.W.3d 565 (Tex. App.—Waco 2008, no pet.), and *McAfee MX v. Foster*, No. 02-07-00080-CV, 2008 Tex. App.

---

[7] 3 Law Rep. House of Lords 330 (1868).

12

LEXIS 968 (Tex. App.—Fort Worth Feb. 7, 2008, pet. denied) (mem. op.). Both opinions reflect that a jury found a "nuisance"—although there is no elaboration regarding the form of the charge—and that the trial court issued an injunction. Appellees extrapolate from these opinions that no jury finding of intentional, negligent, or abnormal and out-of-place conduct is required to support an injunction. *See Hot Rod*, 276 S.W.3d at 567; *McAfee*, 2008 Tex. App. LEXIS 968, at *1-2. To the contrary, the opinions are silent as to whether, under the charge as submitted, the jury's "nuisance" finding incorporated the findings required to establish actionable nuisance. Moreover, even if appellees' characterizations of the jury findings in the two cases were correct, the absence of a finding of intent, negligence, or abnormal conduct was not raised as an issue on appeal. Consequently, neither case provides support for appellees' argument that such finding is not necessary to obtain injunctive relief.

In light of the foregoing, we hold that in order for the district court to have discretion to issue the permanent injunction, appellees were required to establish actionable nuisance—not merely "nuisance"—either through conclusive evidence or jury findings. The jury found that appellees had failed to establish any theory of actionable nuisance by a preponderance of the evidence, and those findings were "binding" on the district court, *see Texas Pet Foods, Inc.*, 591 S.W.2d at 803, unless the evidence conclusively established actionable nuisance, *see Valenzuela*, 853 S.W.2d at 513. Appellees have suggested that the district court's "finding" of "nuisance" should be construed as a legal determination (not merely a fact finding) that the evidence conclusively established actionable nuisance (not merely "nuisance"), *see* Tex. R. Civ. P. 301, and they urge that this ruling was correct. To the extent that the district court's judgment could be

13

susceptible to this interpretation, we would hold that the evidence falls short of conclusively establishing actionable nuisance.

To conclusively establish a vital fact, the evidence must be such that reasonable people could not disagree that the fact exists. *See City of Keller v. Wilson*, 168 S.W.3d 802, 814-17 (Tex. 2005). To conclusively establish actionable nuisance, then, the evidence must be such that reasonable people could not disagree that Hanson (1) intentionally created a nuisance ("a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort and annoyance to persons of ordinary sensibilities") as to one or more appellees; (2) did so negligently; or (3) did so through conduct that was "abnormal and out of place in its surroundings." *See Likes*, 962 S.W.2d at 503-04. The evidence left room for reasonable disagreement as to both the extent of any interference with appellees' use and enjoyment of their property and Hanson's culpability in regard to such an interference.

The jury heard evidence that the rock quarry has been in existence since the 1930s. Hanson's blasting has occurred no more than once a day, generally between 11 a.m. and 2 p.m., and never on nights or weekends. There was evidence that, although not directly subject to federal or state regulations, Hanson has taken efforts to ensure that blasting at the quarry was consistent with established federal guidelines.

The jury heard evidence that vibrations under 0.75 inches per second peak particle velocity ("PPV") satisfy the federal guidelines established to determine safe blast vibration

14

intensities for single-residence houses.[8] According to the measurements provided by Vibra-Tech,

an independent company hired to measure Hanson's blasts, the average PPV was close to 0.1, and

the highest PPV was 0.59. Appellees obtained their own independent testing that indicated a higher

PPV, but their highest reading was 0.705, which was still below the 0.75 inches per second

threshold. The jury also heard evidence that only one of Hanson's blasts, measured at 134.5

decibels, exceeded the federal threshold for air overpressure of 134 decibels. Such overpressure

reading was characterized as being "unusual,"[9] and the average air overpressure of the blasting was

stated to be 110 decibels.

Appellees provided evidence of physical damage to their homes, consisting mostly

of cracking on floors or walls. However, Hanson's expert witness who examined the damage to

appellees' homes testified that all such damage was due to various combinations of construction

defects, thermal expansion and contraction, moisture exposure, and normal concrete shrinkage. He

further testified that such damage was not different from that observed in houses where there were

no quarry operations.[10]

_____

[8] Catherine Aimone-Martin, Hanson's expert on vibration measurements from blasting, testified that PPV was the best measure to correlate to home damage. Aimone-Martin also testified that she had "100% confidence" that there could be no damage to a single-family residence of the construction type of appellees' homes when the PPV was below 0.75 inches per second.

[9] Aimone-Martin testified that even at 134.5 decibels there was no basis to believe that Hanson's blasting caused damage to appellees' homes. While appellees testified regarding their own experiencing of the blasts, Aimone-Martin testified that her conclusions were based on scientific testing and that appellees' perceptions did not alter her conclusions.

[10] Appellees contend that "nuisance" was established as a matter of law based on testimony of Bruce Northup, a representative of Austin Powder Company, one of the defendants, that he would consider some of the damage to appellees' houses to be a "nuisance." However, Northup clarified that such conclusion was predicated on the assumption that the damage was, in fact, caused by the

There was also evidence regarding Hanson's taking action to reduce the impact on the residents from Hanson's blasting. A commission was formed by the residents to address quarry issues. The commission's meetings were attended by both Hanson's representatives and concerned residents. The readings from the blasting's monitoring were addressed at those meetings, and there was evidence that Hanson acted in response to resident input, including using electronic blasting caps to decrease the blasts' frequency, purchasing a profiler to determine weak spots for blasting, and building a berm of dirt between the quarry and the residential subdivisions. Hanson also allowed the quarry commission to select a company to independently monitor the blasting and, when Vibra-Tech was selected, agreed to pay for such monitoring.

Finally, Bob Gunnarson, the chair of the quarry commission and a resident of the subdivisions, testified that he did not consider the quarry to be a nuisance and that he considered the nearby train to be a greater irritation.

In sum, there is legally sufficient evidence that Hanson's quarry operations did not result in an actionable nuisance to appellees. A jury could reasonably have found that Hanson did not act intentionally or negligently to cause any "nuisance" to appellees, and that Hanson's conduct was not abnormal and out of place in its surroundings. Given the jury's finding of no actionable nuisance by Hanson and appellees' failure to prove an actionable nuisance by Hanson as a matter of law, the district court lacked discretion to issue the permanent injunction. *See Valenzuela*, 853 S.W.2d at 513-14.

blast, a conclusion with which he disagreed. Northup further testified that the blasting level required to cause such damage would also have caused external windows to break, and there was no such breakage.

16

## CONCLUSION

We reverse the portion of the district court's judgment issuing a permanent injunction against Hanson, vacate the injunction, and render judgment that appellees take nothing on their equitable claims against Hanson.[11]

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Henson

Reversed and Rendered on Motion for Rehearing

Filed: February 9, 2011

---

[11] While this appeal was pending, appellees filed a motion seeking contempt sanctions against Hanson for a violation of the permanent injunction that allegedly occurred before the district court's judgment was superseded. Having determined that the district court abused its discretion in issuing the permanent injunction, we dismiss appellees' motion as moot. *See Manufacturers Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 612 (Tex. App.—Houston [1st Dist.] 1991, no writ); *Flowers v. Flowers*, 589 S.W.2d 746, 747-48 (Tex. Civ. App.—Dallas 1979, no writ).