

NUMBER 13-10-00224-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOHN F. HELM, Appellant,

v.

ARTIE G. KINGSTON, Appellee.

On appeal from the 319th District Court of
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Justice Garza**

This is an appeal from a judgment awarding damages and attorney's fees in a

construction dispute. A jury found appellant, John F. Helm, liable for misrepresentation

under the Deceptive Trade Practices-Consumer Protection Act ("DTPA"), TEX. BUS. &

COM. CODE ANN. §§ 17.41–.63 (West 2011), and awarded damages of over $75,000,

plus $95,000 in attorney's fees, to appellee Artie G. Kingston. By seven issues on appeal, which we reorganize as five, Helm contends: (1) the Residential Construction Liability Act ("RCLA"), TEX. PROP. CODE ANN. §§ 27.001–.007 (West Supp. 2010), applied to Kingston's claims; (2) Kingston's claims were barred by limitations and repose; (3) the evidence was insufficient to support the judgment; (4) Helm should have been permitted to assert the corporate form as a defense and to join necessary third parties; and (5) the award of attorney's fees was contrary to law. Kingston raises one issue on cross-appeal. We affirm.

## I. BACKGROUND

In 1995, Kingston purchased a residential unit in Greenway Townhouses in Corpus Christi, Texas, from Greenway Development, Inc. ("GDI"), for $78,300. Kingston claims that, prior to the purchase, he was advised by Helm, GDI's president, that the unit at issue was an "extremely well-built" two-bedroom townhouse. After moving in, Kingston discovered what he believed to be defects in the construction of the unit. Kingston notified GDI of the defects. GDI attempted to repair the defects but Kingston was not satisfied, so Kingston hired an attorney and sent Helm a DTPA notice letter on September 24, 1996, requesting $4,356 in damages and $150 in attorney's fees.[1] *See* TEX. BUS. & COM. CODE ANN. § 17.505(a) (generally requiring plaintiff to give

---

[1] The notice letter complained of the following defects:

1.  The end of certain shoe moldings are not painted.

2.  The front door frame is not properly painted.

3.  Sheetrock nails are working out and are exposed.

4.  Sheetrock seams which were coming apart have been repaired but not repainted.

2

defendant sixty days' written notice before filing suit under the DTPA).

Subsequently, on March 13, 1997, Kingston filed suit, asserting claims of fraud and negligent misrepresentation as well as various DTPA claims. Kingston named Helm, GDI, GDI's construction manager, Dean Park, and Park's company, Construction and Real Estate Investment Corporation, Inc. ("CREIC"), as defendants. The original petition alleged that Helm "fraudulently induced Kingston to believe that the townhouse evidenced the highest quality of workmanship when in fact the quality of workmanship was atrocious." Helm answered and later brought a counterclaim against Kingston for, among other things, filing a frivolous suit.[2] *See* TEX. PROP. CODE ANN. § 27.0031 ("A party who files a suit under this chapter that is groundless and brought in bad faith or for purposes of harassment is liable to the defendant for reasonable and necessary attorney's fees and court costs.").[3]

The case proceeded to trial in 1999. After Kingston presented his case-in-chief, the trial court granted Helm's motion for directed verdict, ruling that the evidence was

---

5.     Utility room is not to specification (too small).

6.     The bathtub was constructed with a flaw or damaged prior to or during installation; someone tried to patch the flaw, putting some sort of filler in place of the enamel which was chipped away.

7.     The back door frame is not properly painted.

8.     There are noticeable dirty fingerprints on ceiling beam left, presumably, by some craftsman.

9.     Ceiling fan area not painted where sheetrock repair was done.

10.    Defective fireplace floor tile installation (tile broken at time of installation).

[2] Helm later filed an amended counter-petition naming CREIC as a counter-defendant.

[3] In 1998, Park filed a notice with the trial court indicating that he had filed for bankruptcy and that his debts had been discharged by the bankruptcy court. As a result, Kingston non-suited Park. Additionally, after the 1999 directed verdict in favor of Helm, Kingston non-suited GDI, and Helm non-suited CREIC.

insufficient as a matter of law to find Helm liable in his individual capacity. Kingston appealed, and we reversed. *Kingston v. Helm*, 82 S.W.3d 755 (Tex. App.—Corpus Christi 2002, pet. denied). We concluded that Helm's status as an agent of GDI did not insulate him from personal liability for his own tortious conduct. *Id.* at 758–64. We also held that article 2.21 of the Texas Business Corporations Act does not require the corporate veil to be pierced in order to hold a corporate agent individually liable for the agent's own tortious conduct. *Id.* at 764–67; *see* Act of June 17, 1983, 68th Leg., R.S., ch. 442, 1983 TEX. GEN. LAWS 2566–67 (expired Jan. 1, 2010) (current version at TEX. BUS. ORGS. CODE ANN. § 21.223 (West Supp. 2010)).

A second trial was not held until 2009. The primary issue at trial was whether, under the Corpus Christi city code, the unit purchased by Kingston was actually an apartment—not a townhouse—by virtue of the fact that the unit had a one-hour firewall rather than a two-hour firewall. The jury found Helm liable on the DTPA misrepresentation claim, finding that Helm "engage[d] in [a] false, misleading, or deceptive act or practice that [Kingston] relied on to his detriment and that was a producing cause of damages to [Kingston]." *See* TEX. BUS. & COM. CODE ANN. § 17.46. In a separate question, the jury declined to find that Helm acted "knowingly" in making the misrepresentations. The jury awarded $75,862.29 to Kingston, representing the "reasonable and necessary cost to repair" the unit at issue so that it is "the property it was represented to be." The jury additionally awarded $95,000 in trial attorney's fees to Kingston, as well as $10,000 upon an unsuccessful appeal to this Court and $3,000 upon an unsuccessful appeal to the Texas Supreme Court. The final judgment which was rendered on the verdict included $48,770.09 in pre-judgment interest as well as five

4

percent post-judgment interest accruing from the date of the judgment until the time the judgment is paid. This appeal followed.

## II. DISCUSSION

### A. Residential Construction Liability Act

By his first issue, Helm argues that Kingston failed to satisfy the requirements of the RCLA. He claims that Kingston's failure to "plead or prove any allegations under the RCLA" "preempts" Kingston's claims for statutory fraud and DTPA violations, and that the application of the RCLA limits Kingston's damages.

The version of the RCLA in effect at the time Kingston filed suit expressly applied to "any action to recover damages resulting from a construction defect" other than claims for personal injury, survival, wrongful death, or damage to goods. Act of June 18, 1993, 73rd Leg., R.S., ch. 797, § 3, 1993 TEX. SESS. LAW SERV. 3171, 3172 (effective Aug. 30, 1993) (amended 1999, 2003) (current version at TEX. PROP. CODE ANN. § 27.002). "Construction defect" was defined in part as "a matter concerning the design, construction, or repair of a new residence, of an alteration of or addition to an existing residence, or of an appurtenance to a residence, on which a person has a complaint against a contractor." Id. § 1, 1993 TEX. SESS. LAW SERV. at 3171 (current version at TEX. PROP. CODE ANN. § 27.001).

The statute contained provisions requiring a claimant to give a contractor sixty days' notice of a construction defect claim, and permitting the contractor to then make a written settlement offer to the claimant within 45 days of receiving the notice. Id. § 5, 1993 TEX. SESS. LAW SERV. at 3172 (current version at TEX. PROP. CODE ANN. § 27.004). If the claimant "unreasonably reject[ed]" a contractor's settlement offer, or did not allow

5

the contractor a reasonable opportunity to repair the defect, the claimant's damages would then be capped at "the reasonable cost of repairs which are necessary to cure the construction defect and which are the responsibility of the contractor," and only attorney's fees incurred before the rejection of the offer would be recoverable. *Id.* "Contractor" was defined as:

> a person contracting with an owner for the construction or sale of a new residence constructed by that person or of an alteration of or addition to an existing residence, repair of a new or existing residence, or construction, sale, alteration, addition, or repair of an appurtenance to a new or existing residence [or] a risk retention group registered under Article 21.54, Insurance Code, that insures all or part of a contractor's liability for the cost to repair a residential construction defect.

*Id.* § 1, 1993 TEX. SESS. LAW SERV. at 3171.

In response, Kingston contends that: (1) Helm was not a "contractor" as defined by the statute; (2) Helm waived the issue by failing to tender a written offer of settlement within 45 days of being notified of Kingston's claims, *see id.* § 5, 1993 TEX. SESS. LAW SERV. at 3172; and (3) Helm waived the issue by failing to request a jury instruction as to whether Helm was a "contractor" under the statutory definition.

We agree that Helm has waived this issue. Texas Rule of Civil Procedure 279 states that "[u]pon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." TEX. R. CIV. P. 279. First, the evidence at trial did not conclusively establish Helm's status as a "contractor" under the statutory definition. In fact, Helm himself testified at a pre-trial hearing that "I was not a contractor" with respect to Kingston's unit; he additionally stated at trial that "I don't do building," explaining that his role instead was to secure financing, and that Park was tasked with the actual

6

construction of the unit at issue. Second, Helm did not submit or request the inclusion in the jury charge of any question related to his RCLA defense. Accordingly, Helm's complaints on appeal regarding the RCLA are waived under rule 279. *See id.* We overrule his first issue.

## B.     Limitations and Repose

Helm contends by his second issue that a new trial should be granted because Kingston's claims regarding the unit's firewall were barred by limitations and the statute of repose.

As noted, Kingston's original petition, filed on March 13, 1997, alleged that Helm "fraudulently induced Kingston to believe that the townhouse evidenced the highest quality of workmanship when in fact the quality of workmanship was atrocious." The original petition elaborated as follows:

> The following constitute, without limitation, examples of the workmanship in the townhouse: the bathtub is installed in a flawed and patched condition; the fireplace tile has cracked as a result of improper installation; painting throughout the townhouse is improperly done; there are defects in the vinyl flooring and in the driveway in back of the townhouse; nails are working out of the sheetrock resulting in the exposure of nail heads; fingerprints can be evidenced on a ceiling beam; and the carport and townhouse roof are not properly flashed together.

Kingston's tenth amended petition, filed on May 1, 2007, retained those allegations and also included an allegation that the unit at issue "was not constructed as a townhouse with two-hour firewalls and other features required by the City of Corpus Christi Building Code . . . ."[4] Helm argues that the claims related to the firewall are barred because

---

[4] Kingston's thirteenth amended petition, his live pleading at trial, contained the following revised allegation: "[T]he construction of the [unit at issue] constitutes a fire hazard because it does not have two[-]hour resistant firewalls that are required for townhouses by the Standard Building Code adopted and utilized by the City of Corpus Christi, Texas."

7

Kingston "had knowledge of a defect in the firewall" as early as 1997 but did not assert them until 2007.

DTPA claims are governed by a two-year statute of limitations. TEX. BUS. & COM. CODE ANN. § 17.565. Under the statute, all such claims must be brought "within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." *Id.* However, an amended or supplemented pleading "that changes the facts or grounds of liability or defense" is not subject to limitations "unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence." TEX. CIV. PRAC. & REM. CODE ANN. § 16.068 (West 2008).

Helm points to *Sanders v. Construction Equity, Inc.*, 42 S.W.3d 364 (Tex. App.— Beaumont 2001, no pet.), in arguing that Kingston's failure to specifically allege his firewall-related claims until 2007 bars those claims. In *Sanders*, the plaintiffs originally alleged only that there was "a defective fireplace and gas logs that did not work properly." *Id.* at 366. After the statute of limitations had run, the plaintiffs filed an amended petition making additional complaints regarding the construction of their house. *Id.* The court held that the new claims were time-barred because they were "wholly based on a new, distinct, or different transaction or occurrence." *Id.* at 369. Specifically, the court found that:

> While it is true that the defects added by the second amended petition all arise out of the building and the sale of the house, the original pleading was specific. The Sanders[es] complained only of the "defective fireplace and/or logs" and the consequential damages flowing from those defects. The new complaints do not relate to the fireplace and logs at all, but are a

8

> myriad of complaints terminating in the conclusion by the Sanders[es] that the house was just poorly constructed overall.

*Id.* Helm argues that the same reasoning applies here because "the construction of a two[-]hour versus a one[-]hour firewall is an entirely different defect than was claimed in the original petition." Because *Sanders* is readily distinguishable, we disagree. Here, unlike in *Sanders*, Kingston's original petition contained a broad, general allegation that "the quality of workmanship" in the unit at issue "was atrocious." The specific allegations contained in the original petition were explicitly set forth "without limitation" as mere examples of construction defects. And, Kingston's later complaint regarding the firewall was not "wholly based on a new, distinct, or different transaction or occurrence" than that alleged in his original petition; rather, that complaint related back to Kingston's original contention regarding the overall quality of workmanship. The complaint regarding the firewall was therefore not barred by the statute of limitations.

Helm further contends that the statute of repose[5] applicable to the construction or repair of improvements to real estate bars Kingston's firewall claims. That statute provides that suit "against a person who constructs or repairs an improvement to real property" based on a claim "arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement" must be brought "not later than 10 years after the substantial completion of the improvement." TEX. CIV. PRAC. & REM. CODE ANN. § 16.009(a) (West 2002).[6] However, repose is an

---

[5] "A statute of repose in a general sense is a legislative enactment which sets a period of time within which an action may be brought. A statute of limitation is a category of repose statute." *Johnson v. Ft. Worth*, 774 S.W.2d 653, 654 (Tex. 1989) (citations omitted). In a more specific sense, a statute of repose runs from a specified date without regard to accrual of any cause of action, unlike traditional limitations provisions, which begin running upon accrual of a cause of action. *Trinity River Auth. v. URS Consultants*, 889 S.W.2d 259, 261 (Tex. 1994).

[6] The statute further states that, if the claimant presents a written claim for damages within the

9

affirmative defense which must be pled and proven by the defendant. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996); *Ehler v. LVDVD, L.C.*, 319 S.W.3d 817, 821 (Tex. App.—El Paso 2010, no pet.); *Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 416 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We agree with Kingston that Helm has waived this issue by failing to plead it.

Helm's second issue is overruled.

## C. Evidentiary Sufficiency

By his third issue, Helm contends that, as a matter of law, his statement to Kingston that the unit at issue was of "good quality" cannot support a finding of misrepresentation under the DTPA, and that any such statement was not a producing cause of Kingston's damages. He further argues that Kingston "completely failed to mitigate his damages."

We construe these arguments as challenges to the legal sufficiency of the evidence supporting the jury's verdict. We will sustain such a challenge only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We consider the evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it. *Id.* at 822. To establish a DTPA claim, Kingston was required to show: (1) that he was a

---

ten year period, the period is extended for two years after the claim is presented. TEX. CIV. PRAC. & REM. CODE ANN. § 16.009(c) (West 2002). Moreover, if the claimant's alleged injury occurs in the tenth year of the limitations period, the claimant may bring suit within two years after the day the cause of action accrues. *Id.* § 16.009(d).

consumer[7]; (2) that Helm engaged in false, misleading, or deceptive acts; and (3) that these acts constituted a producing cause of Kingston's damages. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(1); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).

### 1. Statement of Fact or Opinion

Helm contends that his statement to Kingston that the unit at issue was of "good quality" was mere puffery or opinion, and therefore the evidence was insufficient to establish that he engaged in a false, misleading, or deceptive act under the DTPA. *See Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex. 1980) (holding that "[m]isrepresentations, so long as they are of a material fact and not merely 'puffing' or opinion, are . . . actionable" under the DTPA); *Autohaus v. Aguilar*, 794 S.W.2d 459, 462 (Tex. App.—Dallas 1990, writ denied).

Whether a statement is a statement of fact[8] or merely one of opinion or mere puffery depends on the circumstances in which the statement is made. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995). Courts have generally considered three factors in making this determination. *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 230 (Tex. App.—Houston [14th Dist.] 1996, writ denied). First, the court examines the specificity of the alleged misrepresentation. *Id.* An imprecise or vague representation may constitute a mere opinion. *Id.* Second, courts will compare the knowledge of the buyer and the seller. *Id.* (citing *Autohaus*, 794 S.W.2d at 463).

---

[7] Helm does not contest the sufficiency of the evidence showing that Kingston was a consumer.

[8] "A statement of fact is one that (1) admits of being adjudged true or false in a way that (2) admits of empirical verification." *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir. 1986) (applying Texas law).

11

Whether a representation is merely an expression of opinion depends in part upon whether the seller asserts a fact of which the buyer is ignorant, or merely states an opinion or judgment on a matter on which the seller has no special knowledge and on which the buyer may be expected to have an opinion and exercise his judgment. *Id.* (citing *Royal Business Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34, 41 (7th Cir. 1980)); *see U.S. Pipe & Foundry Co. v. City of Waco*, 130 Tex. 126, 108 S.W.2d 432, 436–37 (1937) ("Superior knowledge of seller, in conjunction with the buyer's relative ignorance, operates to make the slightest divergence from mere praise into representations of fact effective as a warranty."). Finally, courts look at whether the representation pertains to a past or current event or condition, or to a future event or condition. *Humble Nat'l Bank*, 933 S.W.2d at 230.[9]

Considering the relevant factors, we find that Helm's statements are actionable under the DTPA. We note first that, according to Kingston, Helm's representations went beyond merely asserting that the unit was of "good quality." Rather, Kingston testified at trial that during their meeting in 1997, Helm represented to him that the unit was an "extremely well built . . . two-bedroom townhouse with a rebar foundation." These statements are not mere puffery or opinion. While the representation that the unit was "extremely well built" is general and vague, the other representations made by Helm are specific. Helm, as president of GDI, was in a position to have "superior knowledge" about the quality of the unit in general, and about the alleged firewall defect in particular.

---

[9] Courts have held that even an opinion may be actionable if: (1) it is "intertwined" with "direct representations of present facts"; (2) "the speaker has knowledge of its falsity"; (3) it is "based on past or present facts"; or (4) the speaker has "special knowledge of facts that will occur or exist in the future." *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 889 (Tex. App.—Austin 2008, no pet.) (quoting *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930–31 (Tex. 1983)).

That is, Kingston could not have reasonably been "expected to have an opinion and exercise his judgment" as to the veracity of Helm's representations. *Id.* And, the statements made by Helm related to a past or present condition: namely, the quality of the workmanship in the completed unit.

Finally, it is noteworthy that the DTPA specifically authorizes an action based on a misrepresentation about the "quality" of a product. In particular, section 17.46(b)(7) provides that "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" is a false, misleading or deceptive act or practice. TEX. BUS. & COM. CODE ANN. § 17.46(b)(7). In *Presidio Enterprises, Inc. v. Warner Bros. Distributing Corp.*, 784 F.2d 674 (5th Cir. 1986), the Fifth Circuit, applying Texas law, held that a statement by the defendant that a movie would be a "blockbuster" was mere puffing or opinion as to "quality" and thus was not actionable under the DTPA. The court explained:

> The inapplicability of the DTPA to subjective opinions on aesthetic matters is particularly manifest in the provisions of section 17.46(b)(7) referring to the "standard, quality, or grade" of "goods or services." The Texas Supreme Court has defined "quality" under this section as "a measure of degree; as to particular goods quality may be calibrated by standard or grade, *as with eggs or meat*, or specified by style or model, *as with machinery*." *Pennington*, 606 S.W.2d at 687 (emphasis added). It goes almost without saying that the quality of motion pictures cannot be "calibrated" in this way. . . . No matter how one slices them, artistic works simply do not belong on a slab alongside "eggs, meat, and machinery," and we decline to put them there unless and until the legislature and courts of Texas indicate that Texas law departs in this respect from the salutary principles of the common law.

*Id.* at 686–87. Residential housing units are not artistic works for which quality is inherently a matter of subjective judgment. Rather, the quality of workmanship in such

units may be objectively judged by reference to precise specifications and well-defined terms. We conclude that Helm's statements are actionable under the DTPA.[10]

### 2. Producing Cause

Helm also argues by his third issue that there was no evidence supporting the jury's finding that his representations were a "producing cause" of Kingston's damages. Again, we disagree. Kingston testified that he relied on Helm's representations when he decided to purchase the townhouse. Viewing this testimony in the light most favorable to the verdict, *see City of Keller*, 168 S.W.3d at 822, we conclude that the evidence was sufficient to support this element.

### 3. Mitigation of Damages

Finally, Helm contends by his third issue that judgment should be rendered in his favor because Kingston "completely failed to mitigate his damages." Generally, if a plaintiff fails to mitigate his damages by treating his injury "as a reasonable prudent person would have done in the same or similar circumstances," the plaintiff cannot recover damages proximately resulting from that failure. *Gunn Infiniti v. O'Byrne*, 996 S.W.2d 854, 862 (Tex. 1999) (citing *Moulton v. Alamo Ambulance Service, Inc.*, 414 S.W.2d 444, 447, 449 (Tex. 1967)). More specifically, a plaintiff may not recover damages that could have been avoided or minimized "at a trifling expense or with

---

[10] At oral argument, Helm's counsel argued that, under our 2002 opinion, a party cannot be held individually liable for misrepresentation unless the jury finds that the party acted "knowingly." *See Kingston v. Helm*, 82 S.W.3d 755, 759 (Tex. App.—Corpus Christi 2002, pet. denied) ("The law is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation."). According to Helm's counsel, because the jury failed to find that Helm acted "knowingly," he cannot be held individually liable. Assuming, but not deciding, that Helm's interpretation of our 2002 opinion is correct, we nevertheless note that Helm has not raised this issue in his appellate brief, and so we do not consider it. *See French v. Gill*, 206 S.W.3d 737, 743 (Tex. App.—Texarkana 2006, no pet.) ("An issue or counter-issue may not be raised for the first time at oral argument unless the issue has been first presented in the [party's] written brief.") (citing *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998)).

14

reasonable exertions." *Mondragon v. Austin*, 954 S.W.2d 191, 195 (Tex. App.—Austin 1997, writ denied); *see Gunn Infiniti*, 996 S.W.2d at 858 ("[A] plaintiff in a DTPA case has the same duty to mitigate damages as in other cases.").

The burden of proof on the issue of mitigation is on the defendant. *Am. W. Airlines, Inc. v. Tope*, 935 S.W.2d 908, 915 (Tex. App.—El Paso 1996, no writ) (citing *Gulf Consol. Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex. 1983) (op. on reh'g)). When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, that party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

The jury was asked to include in the damages award only "[t]he reasonable and necessary cost to repair, and make the [unit] to be the property it was represented to be." The jury was specifically instructed not to include in its damages award "any amount that you find [Kingston] could have avoided by the exercise of reasonable care." Kingston's expert, general contractor Richard Guerra-Prats, testified that the cost to "cure the construction defects" would be $31,268.99, and that the cost to "make this unit comply with the building code requirements for a townhouse" would be $44,593.30, for a total of $75,862.29. The jury awarded exactly $75,862.29 in damages to Kingston, indicating that it concluded that Kingston could not have avoided any of the damages by the exercise of reasonable care. We therefore must determine whether the evidence established, as a matter of law, that Kingston could have avoided some of the damages by the exercise of reasonable care. *See id.*

15

With respect to the second element of damages identified in the jury charge—the cost to "make the [unit] to be the property it was represented to be"—we find that the evidence did not establish that Kingston could have avoided those damages by the exercise of reasonable care. Guerra-Prats testified that, in order to convert the unit from an apartment into a townhouse, the entire set of units at Greenway Townhouses would have to be torn down, because "it's not considered a townhome unless there's a minimum of two units." Plainly, such an undertaking would involve much more than "a trifling expense," see Mondragon, 954 S.W.2d at 195, and would not be reasonable given that Kingston only owns his particular unit.

With respect to the first element of damages—the "reasonable and necessary cost to repair" the identified defects—Kingston appeared to concede that the defects could have been repaired for $6,500. Kingston testified on cross-examination as follows:

Q. [Helm's counsel] Okay. Now, you just mentioned that you did not— you did not trust anybody that Mr. Helm['s] company or Mr. Park's company would hire to go in and effect the repairs?

A. [Kingston] That's correct.

Q. Okay. And so did you think about [sic] you could have just hired somebody, had whoever you wanted go in there and do those repairs that are listed in the letter and then sent the bill?

A. With the approval of my attorney, yes, sir.

Q. With the approval of your attorney, that's right. And you might have spent $5,000 because that claim there is for a little less than $5,000, right?

A. That's correct.

Q.                And some attorney[']s fees, right?

A.                That's correct.

Q.                And so you could have hired whoever you wanted, whoever you had faith and trust in to go in and effect all those repairs and do whatever you wanted and just sent the bill to them?

A.                Yes, sir.

Q.                And tacked on even $1500?

A.                Yes, sir, with the items I wanted at that time, yes, sir.

Q.                You could have done that?

A.                Yes, sir.

Q.                But instead, you chose to file a lawsuit the first time, correct?

A.                That's correct.

. . . .

Q.                So at any time if you didn't trust Mr. Helm['s] company or Mr. Park's company, you could have either hired anybody you wanted, anybody in Corpus Christi or the surrounding area to either address the issues in [the DTPA notice] letter for less than $5,000 and however much you wanted to charge in attorney's fees and sent the bill over to Mr. Helms' company and Mr. Park's company?

A.                Had I—yes, I could have. Yes, I could have.

. . . .

Q.                And everyone else but you, Mr. Kingston, has made money off of those units[11] and you just refuse to fix up your unit, get it done to what it needs to be done

---

[11] Helm's counsel was referring to evidence indicating that other purchasers of units at Greenway Townhouses had since sold their units at a profit.

and then go on down the road. Why are you doing that to yourself?

A.          Because we initiated a lawsuit back in 1997.

Helm argues that this testimony establishes as a matter of law that Kingston could have avoided all but $6,500 of the amount associated with making repairs to his unit.[12]  We disagree.  Kingston did testify that he could have had all of the defects alleged in his DTPA notice letter repaired for $6,500.  However, Kingston's original petition—and the thirteen amended petitions that followed—alleged defects above and beyond those which were included in the DTPA letter.[13]  Guerra-Prats's estimate covered all of the alleged defects, not just the ones asserted in the DTPA letter.  The evidence did not conclusively establish that $6,500 would have been sufficient to repair the defects alleged in the DTPA letter as well as the additional defects alleged in Kingston's pleadings and testified to at trial.  Accordingly, Helm has not satisfied his burden to show that Kingston could have avoided any of his damages by the exercise of reasonable care.

Helm's third issue is overruled.

## D.    Designation of Responsible Third Parties

---

[12] In response, Kingston argues that "Helm's so-called offer to make repairs was a charade" because his "intent was only to fix what he wanted, and nothing else."  We do not find that Kingston failed to mitigate his damages; however, we note that whether Helm's offer to make repairs was sufficient or even sincere is immaterial.  Helm was merely required to show as a matter of law that, with the exercise of reasonable care, Kingston could have avoided some of the damages that he claimed he suffered.  *See Gunn Infiniti v. O'Byrne*, 996 S.W.2d 854, 862 (Tex. 1999) (citing *Moulton v. Alamo Ambulance Service, Inc.*, 414 S.W.2d 444, 447, 449 (Tex. 1967)); *Am. W. Airlines, Inc. v. Tope*, 935 S.W.2d 908, 915 (Tex. App.—El Paso 1996, no writ) (citing *Gulf Consol. Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex. 1983) (op. on reh'g)).

[13] For example, Kingston's thirteenth amended petition contained the following allegations of defects that were not included in the DTPA notice letter:  (1) "painting throughout the [unit] was improperly done"; (2) "there are defects in the vinyl flooring and in the driveway in the back of the [unit]"; and (3) "the ceiling is warped and sags between the ceiling joists."

18

By his fourth issue, Helm argues that the trial court erred in not allowing him to assert the corporate form as a defense[14] or to designate GDI and CREIC as responsible third parties.[15]  Helm filed his motion to designate responsible third parties on April 12, 2007 and, after a hearing, the trial court rendered an order denying the motion on June 7, 2007.

Chapter 33 of the civil practice and remedies code allows a defendant to move for the designation of a "responsible third party," which is defined as

> any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these.

TEX. CIV. PRAC. & REM. CODE ANN. § 33.011(6) (West 2008).  The trial court must grant such a motion if filed timely, unless the plaintiff files an objection and establishes that the defendant, after being given the opportunity to replead, "did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure."  *Id.* § 33.004(g) (West 2008).  We review a trial court's denial of a motion to designate a responsible third party for abuse of discretion. *MCI Sales & Serv. v. Hinton*, 272 S.W.3d 17, 36 (Tex. App.—Waco 2008), *aff'd*, 329 S.W.3d 475 (Tex. 2010); *In re Arthur Andersen LLP*, 121 S.W.3d 471, 483 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (noting that "a trial court ordinarily has great discretion regarding joinder of third parties").

---

[14] Helm argues vaguely that the trial court did not allow him to "assert the corporate form as a defense"; however, he does not present any argument as to this issue other than that relating to the trial court's denial of his motion to designate responsible third parties.  Accordingly, we construe this issue as complaining solely about that denial.

[15] Helm also moved to designate Park as a responsible third party.  The trial court denied the request and Helm does not challenge that decision on appeal.

19

Helm's specific factual assertions regarding the alleged responsibility of GDI and CREIC were contained in his motion to designate. In that motion, Helm asserted that "at all relevant times during the construction and marketing of the [unit] he was acting in his corporate capacity as an officer of GDI." Helm also claimed that, "according to the terms of a joint venture agreement between GDI and CREIC, CREIC was responsible for building the . . . units and GDI would secure funding for the project and act as the marketing agent for the . . . units." Finally, Helm contended that GDI is a "proper and responsible third party" because "title to the subject property properly passed from GDI to [Kingston] through [Helm] acting in his corporate capacity for GDI . . . ."

In response, Kingston contends that Helm's position fails because it contradicts the law of the case as set forth in our prior 2002 opinion stemming from this litigation.[16] *See Kingston*, 82 S.W.3d at 755; *see also Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006) (noting that, under the law of the case doctrine, questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages). Kingston specifically argues that, in our prior opinion, we found that "Helm could not assert the corporate form and was subject to individual liability for his own DTPA violations, even if he was acting as an agent for GDI." That is only half correct. In 2002, we were asked only to determine whether the trial court erred in granting a directed verdict dismissing Kingston's claims against Helm personally. *See Kingston*, 82 S.W.3d at 758. We concluded that "Helm may be held liable individually

---

[16] Kingston also argues that Helm waived this issue, noting that Helm had unsuccessfully attempted to designate Park and CREIC as responsible third parties prior to the 2002 appeal, but failed to raise a cross-point to the 2002 appeal challenging the trial court's ruling as to those parties. We assume, but do not decide, that Helm did not waive the issue.

20

for the torts he is alleged to have personally committed," *id.* at 764, noting the general rule of agency law that:

> An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interest, or where the principal owes no duty or less than the normal duty of care to the person harmed.

*Id.* (citing RESTATEMENT (SECOND) OF AGENCY § 343 (1958)). We never held, as Kingston claims, that Helm *could not* assert the corporate form as a defense. Rather, we held only that Helm *could* be found liable in his personal capacity if the evidence supported such a finding, and that the directed verdict in favor of Helm in his personal capacity was therefore improper. The law of the case doctrine does not preclude Helm from challenging the trial court's denial of his motion to designate GDI and CREIC as responsible third parties.

Nevertheless, because Kingston objected to Helm's motion to designate, Helm was under an obligation to "plead sufficient facts concerning the alleged responsibility" of the alleged responsible third parties "to satisfy the pleading requirement of the Texas Rules of Civil Procedure." TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(g). We conclude that he failed to do so. As noted, Helm's motion to designate made only the following factual assertions: (1) Helm was acting on behalf of GDI when he made the alleged misrepresentations; (2) CREIC and GDI were responsible for building and funding the units, respectively; and (3) title to the unit at issue passed from GDI to Kingston through Helm. The latter two factual allegations do not establish a basis for finding either GDI or CREIC liable for misrepresentation. The first fact may have provided a basis for finding GDI liable because "generally, a corporate officer's acts on the corporation's behalf are

21

deemed to be acts of the corporation." *Kingston*, 82 S.W.3d at 758 (citing *Leitch v. Hornsby*, 935 S.W.2d 114, 117–18 (Tex. 1996)). However, as we noted in 2002, "[t]he general rule is that directors or officers of a corporation are individually liable to third parties for their fraudulent acts and for damages resulting from false representations they make to third persons regarding material matters." *Id.* at 764 (citing 19 C.J.S. CORPORATIONS § 546 (1990)). Moreover, GDI's liability, if any, under these facts would have been solely vicarious or derivative because it would have been based exclusively on Helm's misrepresentations. We have previously held that a party whose liability is solely vicarious or derivative in nature does not "meet[] the definition of a responsible third party" because it is only "vicariously liable for [the defendant's] actions and thus stands in the same position in this case as [the defendant] himself." *F.F.P. Operating Partners, L.P. v. Duenez*, 69 S.W.3d 800, 807–08 (Tex. App.—Corpus Christi 2002) (noting that "[a] vicariously liable party's right of recovery against the tortfeasor is through indemnity rather than contribution"), *rev'd on other grounds*, 237 S.W.3d 680 (Tex. 2007); *see Conkle v. Chery*, No. 03-08-00379-CV, 2009 Tex. App. LEXIS 1385, at *14–15 (Tex. App.—Austin Feb. 25, 2009, no pet.) (mem. op.) (noting that courts have held that vicariously liable parties should not be included in the jury's apportionment determination). Accordingly, GDI could not have been held liable for Helm's alleged misrepresentations under the alleged facts.

Helm asserts alternatively that, "even though the third parties may not have misrepresented anything to Kingston, they may be liable for fraud because they allegedly participated in the fraudulent transactions and reaped the benefits." For that proposition, Helm cites *In re Arthur Andersen LLP*, 121 S.W.3d at 474, which involved

the collapse of Enron Corporation ("Enron"). In that case, several Enron shareholders sued Enron's president and chief executive officer, Ken Lay, among other parties, alleging that Lay misrepresented to them that "they would make lots of money if they invested in Enron." *Id.* The plaintiffs contended that the executives concealed certain transactions from shareholders in order to hide Enron's debts and artificially inflate its earnings. *Id.* at 479–80. The defendants, including accounting firm Arthur Andersen, sought to designate several financial institutions as responsible third parties, but the trial court denied the motion. *Id.* The Fourteenth Court of Appeals held that this was an abuse of discretion in part because both sides conceded that the third parties were "intimately involved" in the concealed transactions. *See id.* at 484.

Helm is correct that, under *Andersen*, third parties may be liable for fraud if they "participated in the fraudulent transactions and reaped the benefits." *Id.* at 481. However, Helm never specifically alleged that GDI or CREIC participated in Helm's alleged fraudulent transactions or reaped the benefits therefrom; instead, the liability of those parties was based solely on vicarious responsibility for the individual acts of Helm and Park, respectively. *See F.F.P. Operating Partners, L.P.*, 69 S.W.3d at 807–08. Moreover, *Andersen* is distinguishable from the instant case. First, the *Andersen* court utilized an earlier and significantly different version of the statute authorizing the designation of responsible third parties.[17] Second, the *Andersen* court noted that the

---

[17] The prior version of the statute defined "responsible third party" as any person to whom all of the following apply:

    (1)    the court in which the action was filed could exercise jurisdiction over the person;

    (2)    the person could have been, but was not, sued by the claimant; and

    (3)    the person is or may be liable to the plaintiff for all or a part of the damages claimed against the named defendant or defendants.

parties made "broad, sweeping allegations" with respect to the third-party financial institutions and that those entities "play a pivotal role in the stories the Plaintiffs will tell the jury." 121 S.W.3d at 484. The court explained:

> [A]s the brief history of this debacle shows and these pleadings allege, the fall of Enron is not about one person, or even a few people; it is the story of a host of actors. On these pleadings, asking the jury, or us, to look only at Lay, Fastow, Skilling, Andersen, and some of its partners, is like asking someone to look only at the eye of the hurricane and to ignore the furor surrounding it. Neither is an accurate picture.

*Id.* The instant case, on the other hand, does not involve "a host of actors"; rather, the only acts alleged to have caused Kingston's damages were conducted solely by Helm.

For the foregoing reasons, we conclude that Helm "did not plead sufficient facts concerning the alleged responsibility of" GDI or CREIC such that the denial of his motion to designate those entities as responsible third parties would constitute an abuse of discretion. Helm's fourth issue is overruled.

## E.    Attorney's Fees Award

Helm claims by his sixth issue that the jury's award of $95,000 in trial attorney's fees to Kingston was "contrary to law." He argues that "this case involved no novel issues of law nor required any special activity on behalf of the attorneys, other than the exercise of patience."

The DTPA provides that "[e]ach consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees." TEX. BUS. & COM. CODE ANN. § 17.50(d). In determining whether a fee award is reasonable, we consider the following factors: (1) the time and labor required, novelty, and difficulty of the question presented

---

Act of May 18, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 TEX. SESS. LAW SERV. 971, 972 (amended 2003).

24

and the skill required to properly perform the legal service; (2) the likelihood that the acceptance of employment precluded other employment by the lawyer; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). A litigant is not required to present evidence on each of these factors. *In re Estate of Vrana*, 335 S.W.3d 322, 329–30 (Tex. App.—San Antonio 2010, pet. denied) (citing *Burnside Air Conditioning & Heating, Inc. v. TS. Young Corp.*, 113 S.W.3d 889, 898 (Tex. App.—Dallas 2003, no pet.); *Acad. Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 742 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). Rather, we also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties in determining the reasonableness of the fee award. *Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 767 (Tex. App.—Corpus Christi 2004, no pet.).

We review a jury's finding of the amount of reasonable and necessary attorney's fees incurred for sufficiency of the evidence. *Carlile v. RLS Legal Solutions, Inc.*, 138 S.W.3d 403, 409 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "We must be mindful, however, that we are reviewing a jury's verdict and may not substitute our judgment for that of the factfinder*." C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App.—Houston [1st Dist.] 2004, no pet.). When a party attacks the legal sufficiency of

25

an adverse finding on an issue it did not have the burden to prove at trial, it must demonstrate that there is no evidence to support the adverse finding. *Carlile*, 138 S.W.3d at 409. In reviewing a no-evidence issue, we consider all of the record evidence in a light most favorable to the verdict and indulge every reasonable inference from that evidence in support of the verdict. *Id.*

Kingston's expert testified that, given the age of the case (thirteen years from the time suit was filed until trial), the first appeal, and the number of trial settings (as many as twelve), approximately $300,000 was a reasonable fee. On the other hand, Helm's expert testified that $30,000 was reasonable and necessary, given what he viewed as a simple case with a relatively small amount in controversy at the outset of the litigation. The jury awarded an amount closer to the estimate of Helm's expert than to the estimate of Kingston's expert. In any event, there was evidence adduced supporting the jury's decision, and we may not substitute our judgment for that of the jury. *See C.M. Asfahl Agency*, 135 S.W.3d at 802.

Helm suggests that the fee award is unreasonable because it greatly exceeded the amount of damages awarded. However, in a DTPA case, the ratio between the actual damages awarded and the attorney's fees is not a factor that determines the reasonableness of the fees. *See, e.g., Seabury Homes, Inc. v. Burleson*, 688 S.W.2d 712, 716 (Tex. App.—Fort Worth 1985, no writ) (affirming award of $15,000 in attorney's fees and award of $2,000 in damages, trebled to $6,000); *Jack Roach Ford v. De Urdanavia*, 659 S.W.2d 725, 730 (Tex. App.—Houston [14th Dist.] 1983, no writ); *see also Tejas Toyota, Inc. v. Coffman*, No. 01-06-00347-CV, 2007 Tex. App. LEXIS 3448, at *16 (Tex. App.—Houston [1st Dist.] May 3, 2007, no pet.) (mem. op.).

Helm further contends that Kingston impermissibly failed to segregate the fees attributable to his causes of action which were unsuccessful. Generally, a party is required to segregate fees between claims for which fees are recoverable and those for which they are not, and between successful and unsuccessful causes of action. *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 896 (Tex. App.—San Antonio 1996, writ denied) (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991)). However, an exception to the segregation requirement applies when the attorney's fees incurred are rendered in connection with claims arising from the same transaction or occurrence and are 'so interrelated that their prosecution or defense entails proof or denial of essentially the same facts.'" *Id.* (citing *Stewart Title Guar. Co.*, 822 S.W.2d at 11). Here, each of Kingston's claims arose from the same transaction or occurrence and involved "essentially the same facts." Accordingly, he was not required to segregate his fees. *See id.* We overrule Helm's sixth issue.

**F.    Cross-Appeal**

On cross-appeal, Kingston argues that he is entitled to post-judgment interest on the amount of unpaid appellate costs that he was awarded by this Court in connection with successfully prosecuting his 2002 appeal.

On May 9, 2003, after the Texas Supreme Court denied Helm's petition for review of our 2002 opinion, this Court issued its mandate which awarded Kingston appellate costs in the amount of $10,312.30. Helm then filed a motion with the trial court to retain the costs in the trial court's registry until final judgment was rendered in the case. According to a letter that appears in the record, Helm deposited $10,312.30 in the trial court's registry on September 22, 2004. On November 3, 2004, the trial court

27

denied Helm's motion to retain, and ordered that "said monies be paid immediately to [Kingston], and that [Kingston] recover his post-judgment interest as allowed by law." On November 12, 2004, Helm paid Kingston $10,312.30. Subsequently, after final judgment was rendered in 2009, Kingston moved the trial court to "recover the accrued interest on the unpaid amount" of costs.[18] The trial court denied the motion.

Kingston claims by his cross-issue that the trial court erred by denying that motion. He claims that he is entitled to interest that accrued on the $10,312.30 amount from May 9, 2003, the date we issued our mandate, to November 12, 2004, the date Helm paid the assessed costs, because the "post-judgment interest" referred to in the trial court's November 3, 2004 order "began accruing on the date the mandate issued" for the 2002 appeal. We disagree. It is true that, once our mandate was issued, the trial court and the parties were bound to comply with our judgment. *See* TEX. R. APP. P. 51.1(b) ("When the trial court clerk receives the mandate, the appellate court's judgment must be enforced . . . ."); *see Whitmire v. Greenridge Place Apts.*, 333 S.W.3d 255, 261 (Tex. App.—Houston [1st Dist.] 2010, pet. dism'd w.o.j.) ("The trial court has no jurisdiction to review, interpret, or enforce [the appellate court's] mandate; it must observe and carry it out. Its orders carrying out the mandate are ministerial." (Internal quotations omitted)). Further, neither Helm's motion to deposit the assessed costs in the trial court's registry, nor his actual deposit of those costs in advance of any ruling on his motion, changed the fact that he conclusively and finally owed the $10,312.30 as of the date our mandate issued. However, our mandate did not explicitly require Helm to

---

[18] Kingston specifically contends that, because Helm did not include post-judgment interest in his November 12, 2004 payment, "the first $793.86 of the $10,312.30 he paid was applied to accrued interest, leaving an unpaid principal [balance] in the equal amount of $793.86."

28

pay interest in the event that he does not immediately pay the assessed costs. Moreover, Kingston does not direct us to any authority, and we find none, establishing that Helm was required to pay such interest in the absence of a explicit authorization in our mandate, or that a trial court errs if it fails to order that such interest be paid. *See* TEX. R. APP. P. 38.1(i). We therefore cannot conclude that the trial court erred in denying Kingston's motion to recover the allegedly unpaid amount of interest. Kingston's issue is overruled.

## III. CONCLUSION

We affirm the judgment of the trial court.

DORI CONTRERAS GARZA
Justice

Delivered and filed the
21st day of December, 2011.

29